UNITED STATES v. HOWELL et al.

(Fourth Division. Fairbanks.    October 23, 1916.)

No. 733, Cr.

STATUTES ☞114(7)—TITLE OF ACT—AMENDING ACT.
   The title of the eight-hour law passed by the Legislature
of Alaska in 1913 (Sess. Laws Alaska 1913, c. 29, p. 35) limits
its application to lode mining claims.    The act of 1915 (Sess.
Laws Alaska 1915, c. 6, p. 6), amending the same, extended its
provisions to underground placer mining claims, but without any
change or extension of the title of the amending act.    Held, the
amendatory act of 1915 embraces more than one subject, and,
the extension to "underground placer mines" not being expressed
in its title, the act, to that extent, is void for conflict with the
eighth section of the Organic Act of August 24, 1912 (37 Stat.
L. 514, c. 387 [U. S. Comp. St. 1916, § 3535]).

The defendants herein were indicted at the special July,
1916, term of the district court at Ruby, Alaska, for a viola-
tion of the eight-hour law of Alaska (chapter 29 of the Ses-
sion Laws of Alaska for 1913, as amended by chapter 6 of
the Session Laws of Alaska for 1915).

On motion of the attorneys for the defendants, the United
States district attorney consenting thereto, the case was trans-
ferred to Fairbanks.

To the indictment the defendants have interposed a demurrer
upon the ground that the indictment does not substantially
conform to the requirements of chapter 7 of title 15 of the
Compiled Laws of Alaska, and that the facts stated in the in-
dictment do not constitute a crime.          ;

The body of the indictment is as follows:

"Sylvester Howell and Jennie Cleveland are accused by the grand
jury for the territory of Alaska, Fourth judicial division, convened at
Ruby, for the special July, 1916, term of the district court, by
this indictment of the violation of the eight-hour laws of Alaska, to
wit, of chapter 29 of the Session Laws of Alaska for 1913, as amended
by chapter 6 of the Session Laws of Alaska for 1915, committed as
follows, to wit:

"That the said Sylvester Howell and Jennie Cleveland, on the
15th day of April, one thousand nine hundred and sixteen, in the
Hot Springs precinct, Fourth judicial division, territory of Alaska,
and within the jurisdiction of this court, did then and there willfully
and unlawfully employ one Robert Booth to work for them for

wages for a period of ten hours per day in underground placer mining workings in a certain placer mining claim on Woodchopper creek, precinct aforesaid, a further description whereof being to the Grand Jury unknown, and did upon the aforesaid day willfully and unlawfully cause the said Robert Booth to work in said underground placer mining workings pursuant to said employment for a period of ten hours, the said Sylvester Howell and Jennie Cleveland being then and there the operators and managers of said workings and there being then and there, in connection with said underground workings, no urgent necessity or emergency where life or property were in imminent danger."

In order to have a clear understanding of the questions raised by the demurrer, it is necessary to set out in full the title and first two sections of the act of 1913 and the title and first two sections of the amendatory act of 1915:

### Chapter 29, Session Laws 1913.

An act to declare employment in underground mines, applied metalliferous lode mining only, underground workings, open cut workings, open pit workings, smelters, reduction works, stamp mills, roller mills, concentrating mills, chlorination processes, cyanide processes, to be injurious to health and dangerous to life and limb, to regulate and limit the hours of employment in said occupations, to declare the violation thereof a misdemeanor and to provide penalties for the violation thereof.

Be it enacted by the Legislature of the territory of Alaska:

Section 1. Employment in underground mines, underground workings, open cut, open pit workings, smelters, reduction works, stamp mills, roller mills, concentrating mills, chlorination processes, cyanide processes, is hereby declared to be injurious to health and dangerous to life and limb.

Sec. 2. That the period of employment of working men in underground workings, underground mines, stamp mills, and roller mills, open cut workings, chlorination processes, cyanide processes, and at coke ovens shall not exceed eight (8) hours within any twenty-four (24) hours except on such days as change of shift is made; excluding, however, any intermission of time for lunch or meals, and excluding also the time required in descending to, and ascending from, or otherwise going to or from the place where the work is actually carried on, whether going to or coming from the place of work be in going on or off shift, or in going to or returning from meals or lunch; it being the intention of this act to limit the hours of employment in any twenty-four (24) hours to eight hours of actual labor at the face or other place or places where the work or labor to be done is actually performed; except in case of emergency where life and property is in imminent danger or in case of urgent necessity, the period may be extended during the continuance of such emergency or urgent necessity, providing, however, that this act applies to metalliferous lode mining only.

Chapter 6, Session Laws 1915.

An act to amend sections one and two of chapter 29 of Session Laws of Alaska for 1913, an act entitled "An act to declare employment in underground mines, applied to metalliferous lode mining only, underground workings, open cut workings, open pit workings, smelting [smelters], reduction works, stamp mills, roller mills, concentration mills, chlorination processes, cyanide processes, to be injurious to health and dangerous to life and limb, to regulate and limit the hours of employment in said occupations, to declare the violation thereof a misdemeanor and to provide penalties for the violation thereof," approved April 24, 1913.

Be it enacted by the Legislature of the territory of Alaska:

That sections one (1) and two (2) of chapter twenty-nine (29) of the Session Laws of Alaska for 1913, entitled "An act to declare employment in underground mines, applied to metalliferous lode mining only, underground workings, open cut workings, open pit workings, smelting [smelters], reduction works, stamp mills, roller mills, concentrating mills, chlorination processes, cyanide processes, to be injurious to health and dangerous to life and limb, to regulate and limit the hours of employment in said occupations, to declare the violation thereof a misdemeanor and to provide penalties for the violation thereof," approved April 24th, 1913, be amended so as to read as follows:

Section 1. Employment in underground mines, underground workings, open cut, open pit workings, smelters, reduction works, stamp mills, roller mills, concentrating mills, chlorination processes, cyanide processes, gypsum mines and other quarries, coal mines and in and around coke ovens is hereby declared to be injurious to health and dangerous to life or limb.

Sec. 2. That the period of employment of working men in underground workings, underground mines, stamp mills, roller mills, open cut and open pit workings as applied to metalliferous mining, underground placer mining, smelters, reduction works, concentrating mills, gypsum mines and quarries, chlorination processes, cyanide processes, coal mines and in and around coke ovens shall not exceed eight (8) hours within any twenty-four (24) hours, except on such days as change of shift is made, excluding, however, any intermission of time for lunch or meals, and excluding also the time required in descending to and ascending from, or otherwise going to or from the place where the work is actually carried on, whether going to or coming from the place of work be in going on or off shift, or in going to or returning from meals or lunch; it being the intention of this act to limit the hours of employment in any twenty-four (24) hours to eight (8) hours of actual labor at the face or other place or places where the work or labor to be done is actually performed; except in case of emergency where life or property is in imminent danger, or in case of urgent necessity, the period may be extended during the continuance of such emergency or urgent necessity providing this act shall also apply to and include rock quarries, gypsum

quarries ·or workings, coal mines, metalliferous lode mining, underground workings in placer mining claims, and all other kinds of underground workings of any kind or character whatsoever.

Approved April 12, 1915. .

R. F. Roth, U. S. Dist. Atty., of Fairbanks, for the United States.

McGowan & Clark, of Fairbanks, for defendants.

BUNNELL, District Judge. The points urged by the defendant are:

The title of the act of 1913 and the subject-matter of the act specifically limit the scope of the act to lode mining, and, since the title of the amendatory act of 1915 fails to extend the scope of the act, it is not germane to that portion of the subject-matter thereof other than lode mining; the act of 1913 (chapter 29) is void, being special legislation; the indictment does not negative the exception contained in the enacting clause (section 2) of each act, reading "except on such days as change of shift is made"; the indictment is defective in substance, in that it does not charge the employment of a workingman; the indictment is defective in form, in that it does not charge defendants with the commission of a crime, as required by section 2148 of the Compiled Laws of Alaska.

Section 8 of the Organic Act, 37 Stat. L. 512, provides:

"That the enacting clause of all laws passed by the Legislature shall be 'Be it enacted by the Legislature of the territory of Alaska.' No law shall embrace more than one subject, which shall be expressed in its title."

An investigation of the respective Organic Acts of the territories shows that each has contained a section similar, if not identical, to section 8 of our Organic Act, and that during the early days of territorial legislation much difficulty has been experienced, not only by the legislators in selecting apt and appropriate titles for the laws enacted, but also by the courts in passing upon the same, to the end that the title and body of the act, as an expression of the legislative will, shall each serve its own proper purpose and function without doing violence to the plain and positive provisions of the Organic Act or Constitution. The courts have always been disposed to exercise great liberality where the question of the appropriateness of the title of an act has been in question, and it is only when

the title so far violates the provisions of the act as to be impossible of sustaining the same that the act has been declared unconstitutional. It frequently happens, as in this case, that the legislators, impelled by the duty incumbent upon them by virtue of their office, enact a law calculated to insure protection to those engaged in hazardous vocations, and it is with the greatest reluctance that the courts, knowing the legislative will, and realizing the benefits to be gained by such a law, are compelled to hold the same invalid because of a failure on the part of the legislators to follow the plain provisions of the Organic Act. Especially is this true where the benefits to be obtained are generally recognized and a great majority have sought to comply in good faith with the spirit and letter of the law.

The title of chapter 29, Session Laws 1913, reads:

"An act to declare employment in underground mines, applied to metalliferous lode mining only, underground workings, open cut workings, open pit workings, smelters, reduction works, stamp mills, roller mills, concentrating mills, chlorination processes, cyanide processes, to be injurious to health and dangerous to life and limb, to regulate and limit the hours of employment in said occupations, to declare the violation thereof a misdemeanor and to provide penalties for the violation thereof."

Section 1 provides that:

"Employment in underground mines, underground workings, open cut, open pit workings, smelters, reduction works, stamp mills, roller mills, concentrating mills, chlorination processes, cyanide processes, is hereby declared to be injurious to health and dangerous to life and limb."

Section 2, with reference to the period of employment of workingmen while engaged in the various kinds of work enumerated in section 1, specifies a new kind of work to wit, employment of workingmen "at coke ovens." It is apparent that the title of the act is not germane to that portion of the subject-matter of the act relating to the employment of workingmen "at coke ovens," and such subject-matter is therefore mere surplusage. A further examination of section 2 discloses the fact that, although seven other kinds of employment of workingmen are enumerated, to wit, in underground workings, underground mines, stamp mills, roller mills, open cut workings, chlorination processes, and cyanide processes, there

is an express limitation to the scope of the act by the following words:

"Providing however, that this act applies to metalliferous lode mining only."

Eliminating, then, from the title of the act and the first two sections thereof, all that becomes surplusage by reason of the express limitations contained in section 2, chapter 29 would read:

An act to declare employment in underground mines, applied to metalliferous lode mining only, to be injurious to health and dangerous to life and limb, to regulate and limit the hours of employment in said occupation, to declare the violation thereof a misdemeanor and to provide penalties for the violation thereof.

Be it enacted by the Legislature of the territory of Alaska:

Section 1. Employment in underground mines, applied to metalliferous lode mining only, is hereby declared to be injurious to health and dangerous to life and limb.

Sec. 2. That the period of employment of workingmen in underground mines, applied to metalliferous lode mining only, shall not exceed eight (8) hours within any twenty-four (24) hours, except on such days as change in shift is made; excluding, however, any intermission of time for lunch or meals, and excluding also the time required in descending to and ascending from, or otherwise going to or from the place where the work is actually carried on, whether going to or coming from the place of work being going on or off shift, or in going to or returning from meals or lunch; it being the intention of this act to limit the hours of employment in any twenty-four (24) hours to eight hours of actual labor at the face or other place or places where the work or labor to be done is actually performed; except in case of emergency where life and property is in imminent danger or in case of urgent necessity, the period may be extended during the continuance of such emergency or urgent necessity.

It is thus seen that, while the title of the act of 1913 designates eleven kinds of employment which are also enumerated in section 1, only eight kinds of employment are designated in section 2, one of which, to wit, "at coke ovens," is not mentioned in the title. The fact that a title is broader than the act is not fatal, but the scope of the act is necessarily confined to the express limitations set forth in the act itself. So this act, by the provision in section 2, "providing, however, that this act applies to metalliferous lode mining only," is not capable of amendment under the same title, so as to include all kinds of mining and reduction processes.

Following this line of investigation, it is found that the title of the amendatory act enumerates eleven kinds of employment, while section 1 would broaden the scope to fifteen, and section 2 extends the number to sixteen by adding "underground placer mining," all under the title of the original act.

The case of Preston v. Stover, in 70 Neb. 632, 97 N. W. 812, is particularly in point. It is stated in the syllabus:

"Under the old as well as under the present Constitution, where the title to a bill is to amend a particular section of an act, no amendment is permissible which is not germane to the subject-matter of the original section."

It therefore necessarily follows that the demurrer must be sustained.

Since the first point raised by the demurrer disposes of the question, a determination of the other objections is not necessary.