# SALT LAKE CITY v. INDUSTRIAL COMMISSION OF UTAH.

No. 3695. Decided June 11, 1921. (199 Pac. 152.)

1. CONSTITUTIONAL LAW—MASTER AND SERVANT—WORKMEN'S COMPENSATION STATUTE HELD NOT UNCONSTITUTIONAL AS DENIAL OF EQUAL PROTECTION OF LAWS, NOR AS TAKING OF PROPERTY WITHOUT DUE PROCESS. Comp. Laws 1917, § 3140, subd. 1, as amended by Laws 1919, c. 63, provides that an employer not insured in the state insurance fund, on the death of an employé without dependents, shall pay into the state insurance fund $750, to be used, as provided by subdivision 6, for payment of extra compensation in cases of permanent partial disability incurred after a previous permanent partial disability resulting in combined injuries requiring greater compensation than would be payable for the latter injury except for the preexisting disability. *Held*, that the statute is not a denial of the equal protection of the laws as discriminating in favor of the state insurance fund and the employers insured thereby as against other insurance carriers and employers within the act, nor is it a taking of property without due process of law.[1]

2. CONSTITUTIONAL LAW—EMPLOYERS EXERCISING OPTION NOT TO INSURE IN STATE INSURANCE FUND CANNOT COMPLAIN OF CONDITIONS IMPOSED ON THE EXERCISE OF SUCH OPTION. Inasmuch as

---

[1] *American Fuel Co.* v. *Ind. Com.*, 55 Utah 483, 187 Pac. 633, 8 A. L. R. 1342; *Scranton Leasing Co.* v. *Ind. Com.*, 51 Utah 368, 170 Pac. 976; *Ind. Com.* v. *Evans*, 52 Utah 394, 174 Pac. 825; *Garfield Smelting Co.* v. *Ind. Com.*, 53 Utah 133, 178 Pac. 57.

Certiorari.   Award Affirmed.

the state has the power to require all employers to insure in the state insurance fund and not leave it optional, as under the Workmen's Compensation Law, an employer exercising such option cannot complain of the conditions upon which the option is granted as being unconstitutional because discriminatory.

Proceedings under the Workmen's Compensation Law by the father and mother of Asa H. Hancock, employé, deceased, against Salt Lake City to recover compensation for decedent's death. The Industrial Commission of Utah made an award, and the City brings certiorari.

ORDER AFFIRMED.

*W. H. Folland,* City Atty., and *James H. Wolfe,* both of Salt Lake City, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., and *John Robert Robinson,* Asst. Atty. Gen., for defendant.

THURMAN, J.

The facts alleged in plaintiff's brief tend to show that on July 12, 1920, one Asa H. Hancock was a regularly employed member of the fire department of plaintiff, and that on that day he was accidentally killed in the course of his employment. Proceedings were had for compensation before the defendant Industrial Commission (hereinafter called Commission) on the part of the father and mother of deceased, claiming to be his dependents. The Commission found, among other things, that plaintiff was an employer and self-insurer subject to the provisions of the Utah Industrial Act, and that deceased left no dependents. The Commission ordered that plaintiff pay into the state treasury the sum of $750 and reasonable funeral expenses, not exceeding the sum of $150, in accordance with the provisions of the statute hereinafter quoted. The case is before us on a writ of certiorari to review the proceedings.

Some contention was made in plaintiff's brief to the effect that the proceedings before the Commission were not had under the Industrial Act, but under the firemen's pension fund, that plaintiff was not a party to said proceedings, and that therefore the Commission was without jurisdiction to make the order. This contention has since been waived by stipulation.

Plaintiff contends, however, that the Commission acted without and in excess of its jurisdiction, because the statute in pursuance of which the order was made is unconstitutional for the following reasons: (1) That it is a denial of. the equal protection of the laws; (2) that it is a taking of property without due process of law.

Comp. Laws Utah 1917, § 3140, subd. 1, as amended in Sess Laws 1919, p. 163, is the statute against which the constitutional objection is raised, and reads as follows:

"If there be no dependents, the employer or insurance carrier shall pay the burial expenses of the deceased, as provided herein, and shall pay into the state treasury the sum of $750.00 unless the employer is insured in the state insurance fund. Such payments shall be held in a special fund for the purposes provided in subdivision 6 of this section. The state treasury shall be the custodian of this special fund and the Commission shall direct the distribution thereof."

Subdivision 6 of the same section, referred to in subdivision 1, states the purpose for which the payment is exacted and is pertinent in this connection:

"If any employé who has previously incurred permanent partial disability incurs a subsequent permanent partial disability such that the compensation payable for the disability resulting from the combined injuries is greater than the compensation which except for the pre-existing disability would have been payable for the latter injury, the employé shall receive compensation on the basis of the combined injuries, but the liability of his employer shall be for the latter injury only and the remainder shall be paid out of the special fund provided for in subdivision 1 of this section."

In its contention that the statute is a denial of the equal protection of the laws, plaintiff's principal grievance seems to be the apparent discrimination in favor of the state in-

surance fund and the employers insured thereby as against other insurance carriers and employers within the act.

The plaintiff, as an employer under the act, had the choice of any one of three methods of insurance: (1) By insuring in the state insurance fund; (2) by insuring in a stock corporation or mutual association; (3) by carrying its own insurance. Comp. Laws Utah 1917, § 3114. A fourth method was also available to plaintiff, subject to the approval of the Commission, namely, by entering into an agreement with its employés as provided in section 3124 of the same compilation. By insuring in the state insurance fund plaintiff would have avoided the liability in question, but of its own volition it elected to become a self-insurer. It must be conclusively presumed that plaintiff did so with full knowledge of the contingent liability of which it now complains. It must also be presumed that, notwithstanding such contingent liability, plaintiff believed it would be to its advantage to carry its own insurance. In such case it would be relieved of the payment of premiums to another insurance carrier, and would only be subjected to the payment of such compensation as may become due its employés under the terms of the act. If no accident occurred, no payment would be required. In these circumstances defendant contends that, having obtained these advantages by electing to carry its own insurance, and the contingent liability it assumed having now become a fixed obligation, plaintiff should not be permitted to say that the law which fixes the obligation is unconstitutional in that it is a denial of the equal protection of the laws. In support of this contention it relies on a line of decisions practically uniform in holding that, where an employer has the right to elect whether or not he will come within the provisions of the Workmen's Compensation Act, and elects so to do, he will not be permitted to question the constitutionality of the act. Many such cases will be found in the note to *Jensen* v. *Sou. Pac. Co.*, L. R. A. 1916A, at page 414, to which we refer the reader. It is not at all clear to the writer that these cases are applicable to the question presented here. They seem to fall within the principle, from which, as far as we are ad-

vised, there is no dissent, that where a party voluntarily accepts the provisions of an unconstitutional law and becomes a beneficiary thereof, he cannot deny its constitutionality nor be relieved from its onerous conditions. The following cases are typical illustrations of the principle: *Grand Rapids Ry. Co.* v. *Osborn,* 193 U. S. 17, 24 Sup. Ct. 310, 48 L. R. A. 598, and *Daniels* v. *Tearney,* 102 U. S. 415, 26 L. Ed. 187. In the last case cited the court, in its opinion, at page 421 of 102 U. S. (26 L. Ed. 187), says:

"It is well settled as a general proposition, subject to certain exceptions, not necessary to be here noted, that where a party has availed himself for his benefit of an unconstitutional law, he cannot, in a subsequent litigation with others not in that position, aver its unconstitutionality as a defense, although such unconstitutionality may have been pronounced by a competent judicial tribunal in another suit. In such cases the principle of estoppel applies with full force and conclusive effect"—citing cases.

The fundamental distinction between these cases and the case at bar consists in the fact that the plaintiff in the instant case cannot be said to have accepted that provision of the law which it now asserts is unconstitutional. Neither has it received any benefit therefrom; hence it is difficult to see wherein the doctrine of estoppel can apply. In fact, it cannot be contended that plaintiff has voluntarily accepted any provision of the Industrial Act, for the act has been held to be compulsory. *Industrial Com.* v. *Daly Min. Co.,* 51 Utah, 602, 172 Pac. 301. Plaintiff is within the law because it belongs to that class of employers which come within its provisions, but while, for the reason above stated, we are compelled to hold that plaintiff is not estopped from asserting that the provision of the law complained of is unconstitutional, and while the statute on its face appears to be discriminatory, we are not prepared to admit, when considered in its entirety, that the statute is a denial of the equal protection of the laws. The authorities relied on by plaintiff in support of this contention are not convincing. The first case to which our attention is called is *So. Ry. Co.* v. *Greene,* 216 U. S. 400, 30 Sup. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247. The case was appealed from a judgment of the Supreme Court

of Alabama, and the exact question determined by the court
is stated in the following language:

"The important federal question for our determination in this
case is:   When a corporation of another state has come into the
taxing state, in compliance with its laws, and has therein acquired
property of a fixed and permanent nature, upon which it has paid
all taxes levied by the state, is it liable to a new and additional
franchise tax for the privilege of doing business within the state,
which tax is not imposed upon domestic corporations doing busi-
ness in the state of the same character as that in which the foreign
corporation is itself engaged?"

Without indulging in extended comment, the distinction
in the cases is clearly manifest.  In that case the foreign cor-
poration was already within the taxing state, carrying on
business in compliance with its laws and had acquired prop-
erty of a "fixed and permanent nature."  The taxing state
levied a new and additional franchise tax upon the corpora-
tion for the privilege of doing business within the state,
which tax was not imposed upon domestic corporations en-
gaged in business of the same character.  In the instant case
the plaintiff was not engaged in the business of workmen's
compensation insurance when the statute in question was en-
acted; it had acquired no property of a "fixed and perma-
nent value" or otherwise in such business under previous
laws of the state; it had no standing or existence whatever
as an agency authorized by law to carry on the business of
insurance until the privilege was conferred upon it by the
Workmen's Compensation Act in 1917, which act created the
contingent liability of which plaintiff now complains.  In the
Alabama case the federal Supreme Court held that the stat-
ute imposing the discriminating tax was a denial of the equal
protection of the laws, and for the reasons stated we are in
hearty accord with the conclusion reached.  We fail, how-
ever, to discern any analogy between that case and the case
at bar.  Our further reasons for so holding will be stated
more clearly before concluding this opinion.

The remaining cases cited by plaintiff in support of its
contention under this subhead are the following: *American
Fuel Co.* v. *Ind. Com.*, 55 Utah 483, 187 Pac. 633, 8 A. L. R.

1342; *Gulf, C. & S. F. R. Co.* v. *Ellis,* 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666; *Scranton Leasing Co.* v. *Ind. Com.,* 51 Utah, 368, 170 Pac. 976; *Ind. Com.* v. *Evans,* 52 Utah, 394, 174 Pac. 825; *Garfield Smelting Co.* v. *Ind. Com.,* 53 Utah, 133, 178 Pac. 57; *State of South Carolina* v. *United States,* 199 U. S. 437, 26 Sup. Ct. 110, 50 L. Ed. 261, 4 Ann. Cas. 737; *Arnold* v. *State,* 163 App. Div. 253, 148 N. Y. Supp. 479; *In re Western Implement Co.* (D. C.) 166 Fed. 576.

As we view the question submitted for our determination, these cases are in no sense controlling. We therefore decline to enter upon an extended review. The Utah cases, if we understand plaintiff's position, are cited primarily to estab-lish the following propositions: (1) That the employer is primarily liable for the payment of compensation and is not relieved therefrom merely because his liability is insured; (2) that the rate fixed for state insurance becomes the rate to which other insurers must conform; (3) that, although the employer who is insured is not required to pay the award direct, still he has a direct interest in the drafts made upon the insurance fund, because the greater the drafts the greater will be the demands upon the employer who is insured therein; (4) that the same right of access to the judicial tribunals of the state that is accorded to one party must likewise be accorded to the other.

The fundamental idea sought to be deduced from the doctrine of these cases seems to be that all employers are in the same class and all insurance carriers are in the same class, and therefore all in each class should be treated alike, because they are entitled to the equal protection of the laws. The point, apparently most plausible, made by plaintiff, is that, inasmuch as the state has the right to determine the rate it will pay, to which rate other insurers must conform, the requiring of other insurers or employers to pay $750 in case of no dependents, while the state is exempt from such payment, is an unwarranted discrimination in favor of the state. In this connection the point is also made that, being exempt from paying the $750, and at the same time having the exclusive right to determine the rate which it should pay, to

which rate other insurers must conform, the state by reason of its exemption can fix the rate so low that other insurers will be unable to compete.

Assuming that this is a case in which classification must conform to constitutional principles, and also assuming that the provisions of the statute above quoted are the only provisions that should be considered in determining this question, there would be much force in plaintiff's contention that the statute in question is arbitrary and capricious in its classification, and therefore a denial of the equal protection of the laws.   But let us briefly consider the question from another angle, even as to the question whether or not there is an arbitrary and capricious classification.   To do this we should consider the Industrial Act as a whole and apply to it the constitutional provisions invoked by plaintiff as the same have been construed by the court of last resort.   First, we shall quote an excerpt from plaintiff's brief, which, in part at least, states a fundamental principle pertaining to this class of legislation:

"All employers belong to one class; that is, they are all liable alike for compensation to their employés, and their liability is imposed because *it is now well settled that the cost of human wreckage may be taxed against the industry which employs it,* and upon this theory all employers of labor are held to a primary liability." (Italics ours.)

It being "well settled that the cost of human wreckage may be taxed against the industry which employs it," and it also being conceded by plaintiff that the power of the state within constitutional limits is plenary as to this subject, to what extent, if at all, is the classification arbitrary or capricious, or the statute discriminatory in favor of the state or the state insurance fund?   It is true the statute exempts the state from paying the $750 in question while requiring other employers or their insurers to pay it.   Let us see what the state has done as an offset against this exaction from other employers and insurers.   Bearing in mind that "the cost of human wreckage may be taxed against the industry which employs it," this cost of human wreckage ought not to be borne by the state or the taxpayers of the state as such, for

the primary obligation rests upon the industry which employs labor. Notwithstanding this fact, the state of Utah in 1917, when the Industrial Act was passed, provided, without expense to employers, a tribunal for the administration of the act, consisting of three commissioners, and fixed their salaries at $4,000 per annum. In the same act it appropriated the sum of $40,000 for the establishment of a state insurance fund, and the further sum of $50,000 for the payment of salaries and expenses of the Commission and its employés. In 1919 it appropriated the sum of $24,000 for the payment of commissioner's salaries during the following biennium, $3,000 for the payment of their traveling expenses and the investigator's salary, and $10,000 for general office expenses, including salaries of secretary, stenographers, and clerks. The amount appropriated in 1921 for the same purposes amounted to the enormous sum of $95,000. Enough has been said, we think, to conclusively demonstrate that the state has not discriminated against other employers or insurers, for it has taken upon itself the onerous burden which, according to the admission of plaintiff, might have been imposed solely upon the industries employing labor. As against these contributions of the state for the benefit of industries employing labor, can it be justly contended that the demands of the statute that each industry pay into the state treasury the sum of $750 in the event of the remote contingency of an employé's death by accident without dependents is either discriminatory or unjust? Can it be justly contended that the classification is arbitrary or capricious, or that the statute is a denial of the equal protection of the equal protection of the laws? We think not. We do not understand that a classification, in order to avoid objections as to its constitutionality, should be absolutely uniform and equal in every respect as between the parties composing the class. That equality is not always practicable is recognized in many cases decided by the Supreme Court of the United States, and especially in *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61. At page 78, 31 Sup. Ct. 337, at page 340 (55 L. Ed. 369, Ann. Cas. 1912C, 160), the court, speaking through Mr. Justice Van Devanter, says:

Certiorari.  Award Affirmed.

"The rules by which this contention must be tested, as is shown
by repeated decisions of this court, are these: (1) The equal pro-
tection clause of the Fourteenth Amendment does not take from
the state the power to classify in the adoption of police laws, but
admits of the exercise of a wide scope of discretion in that re-
gard, and avoids what is done only when it is without any reason-
able basis, and therefore is purely arbitrary. (2) A classification
having some reasonable basis does not offend against that clause
merely because it is not made with mathematical nicety or because
in practice it results in some inequality. (3) When the classifica-
tion in such a law is called in question, if any state of facts
reasonably can be conceived that would sustain it, the existence
of that state of facts at the time the law was enacted must be
assumed. (4) One who assails the classification in such a law
must carry the burden of showing that it does not rest upon any
reasonable basis, but is essentially arbitrary. *Bachtel* v. *Wilson*,
204 U. S. 36, 41; *Louisville & Nashville R. R. Co.* v. *Melton*, 218 U. S.
36; *Ozan Lumber Co.* v. *Union County Bank*, 207 U. S. 251, 256;
*Munn* v. *Illinois*, 94 U. S. 113, 132; *Henderson Bridge Co.* v. *Hen-
derson City*, 173 U. S. 592, 615."

1. Tested by the rules stated in the excerpt quoted, not
only does it appear that the classification made in the instant
case is not arbitrary or capricious so as to render it obnoxious
to the equal protection clause of the Constitution, but, if
there is any question concerning it, the burden is cast upon
plaintiff to show that the classification does not rest upon any
reasonable basis, but is essentially arbitrary. We are of the
opinion that plaintiff has failed to discharge the burden thus
imposed.

2. But plaintiff also contends that the statute to which ob-
jection is made is the taking of property without due process
of law. Under this subhead it is contended that the exaction
of the $750 from the employer or his insurer under the terms
of the statute is the same in effect as taking money from one
person and giving it to another without any connection what-
ever between the person who receives the money and the per-
son from whom it was exacted. This is hardly a correct state-
ment of either the effect or purpose of the statute. The real
purpose of the statute, both subdivision 1 and subdivision 6
heretofore quoted, is the building up and maintaining of a
special fund for the compensation of employés who by a com-

bination of successive injuries have become permanently and totally disabled, but whose disability is not otherwise provided for in the Industrial Act. We submit the following as a typical illustration: If A. should suffer the total loss of one eye, his compensation under the regular schedule (Comp. Laws Utah 1917, § 3138) would be not exceeding $16 per week for 100 weeks. If he should afterwards lose the other eye in the same or different employment within the act, he would be entitled under the same schedule to an additional sum of not exceeding $16 per week for 100 weeks. The total compensation for the loss of both eyes would be not exceeding $16 per week for 200 weeks. But the loss of both eyes under section 3139 of the same compilation constitutes permanent total disability, for which the injured employé is allowed 60 per cent. of his average weekly wages for a period of five years from the date of the injury, and thereafter 45 per cent. of such average weekly wages during the remainder of his life, the maximum not to exceed $16 and the minimum not less than $7 per week. The discrepancy between the total amount payable to the employé for these successive injuries under the regular schedule and the amount he would receive had he lost both eyes in the same accident under section 3138 would amount to a considerable sum, dependent entirely upon how long the employé lives after the expiration of the first 200 weeks. The $750 exaction from employers is to take care of this discrepancy so that the entire burden may not be cast upon the last employer. If the law imposed the liability upon him alone, the result would be that the unfortunate employé who has suffered only the loss of a single member would be handicapped in obtaining employment thereafter, for the loss of another member might result in permanent total disability. *State Ind. Com.* v. *Newman,* 222 N. Y. 363, 118 N. E. 794.

These were undoubtedly the considerations which moved the Legislature to enact the provisions of the statute of which plaintiff complains. It is undeniable that the purpose was commendable and germane to the general purpose of the Industrial Act. In their discussion of this question counsel for plaintiff indulge in subtleties and refinements which the

writer is unable to follow. They cite no case in point or anal-
ogous in principle. The only case referred to on this branch
of the argument is *Bryant* v. *Lindsay*, 110 Atl. 823, a New
Jersey case arising under a statute of that state. It is stated
by the court that the statute is neither an amendment nor a
supplement to the Workmen's Compensation Act. Speaking
of the statute, at page 824, the court says:

"* * * It requires that, in cases where an employé dies as a
result of an accident arising out of and in the course of his em-
ployment, and leaving no dependents entitled to compensation
under the provisions of the Workmen's Compensation Act, and the
dependents, if there had been any, would have been entitled to
compensation under the said act, then the employer of such person
must pay the commissioner of labor the sum of $400, which the
commissioner is to turn over to the state treasurer, and that all
moneys collected under this act shall be used exclusively for the
purpose mentioned in another act of 1918 (page 429 of the Pam-
phlet Laws of that year), which is the act relating to what is called
the Workmen's Compensation Bureau."

At another point on the same page the opinion reads:

"It seems quite obvious that this is nothing more or less than
a tax imposed for the purpose of supporting the expense of a state
agency. The act, as we have said, does not pretend to be either a
supplement or an amendment of the Workmen's Compensation Act;
it is separate and distinct. Consequently it cannot be supported
upon the theory of a contract between employer and employé, con-
clusively presumed because of the absence of dissent, pursuant to
the statutory procedure outlined in the Compensation Act."

While the court held the statute to be unconstitutional, it
cannot be assumed, in view of the language quoted from the
opinion, that the court would have made the same holding
had it been construing the Utah statute. The dissimilarity
between the two statutes is altogether too pronounced to jus-
tify such assumption.

In reply to plaintiff's contention that the statute author-
izes the taking of property from one person and giving it to
another without any obligatory relation existing between
them, counsel for defendant call our attention to an Okla-
homa case, *Noble State Bank* v. *Haskell*, 219 U. S. 104, 31
Sup. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062, Ann.
Cas. 1912A, 487. The second and last paragraphs of the syl-

labus reflect the opinion of the court sufficiently for our purpose. For further details the reader is referred to the case itself:

"The broad words of the Fourteenth Amendment are not to be pushed to a dryly logical extreme, and the courts will be slow to strike down as unconstitutional legislation of the states enacted under the police power."

"The acts of December 17, 1907, and March 11, 1909, of Oklahoma, subjecting state banks to assessments for a depositors' guaranty fund, are within the police power of the state, and do not deprive banks assessed of their property without due process of law or deny to them the equal protection of the law, nor do they impair the obligation of the charter contracts."

We regard the case last cited as very much in point in support of defendant's position. There are two points of difference between that case and the case at bar: (1) In that case the assessment for the maintenance of the depositors' guaranty fund was made upon all state banks alike. In this case the state insurance fund is exempt from the payment required of others. But that apparent discrimination has been shown to be unreal, in our discussion of the first objection relied on by plaintiff. (2) In the Oklahoma case the assessment for the maintenance of the guaranty fund was compulsory, the banks were required to pay it, while in the instant case the plaintiff could have avoided the liability by insuring in the state insurance fund. If there is any substantial distinction between the two cases, in our opinion the defendant in the instant case is in a stronger position than was the defendant in the Oklahoma case.

But, notwithstanding all that has been said in the preceding pages of this opinion, there is a grave question in the mind of the writer as to whether or not there is really any constitutional question involved. It is practically conceded by plaintiff, and if not conceded it must be admitted, that the state had the right and the power to require all employers to insure in the state insurance fund, and not leave it optional, as under the present law. If then, the right to insure in stock corporations or mutual associations, or of self-insurance, is a mere privilege granted by the state, upon what

theory can the employer complain of the conditions imposed for the privilege granted? If the state has the power to entirely prohibit other employers from carrying their own insurance or insuring otherwise than in the state insurance fund, why may not the state, if it sees fit to grant the privilege, fix the terms and name the conditions? This question was squarely presented by defendant's counsel in their brief filed in the case and was of sufficient importance to deserve a reply. In the absence of some logical reason or authority to the contrary, we feel compelled to hold that the state had the power to name the terms and conditions upon which employers might insure the payment of compensation to their employés even though there was an apparent discrimination in favor of the state.

For the reason stated, the order of the Commission is affirmed.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.