[Civil No. 2696. Filed July 18, 1928.]

[269 Pac. 501.]

HOME ACCIDENT INSURANCE COMPANY, a Corporation, Insurance Carrier, and E. PAYNE PALMER, Doing Business Under the Name and Style of VANADIUM MINING COMPANY, Employer, Petitioners, v. THE INDUSTRIAL COMMISSION OF ARIZONA and R. B. SIMS, BURT H. CLINGAN, and H. S. McCLUSKEY, as Members of The Industrial Commission of Arizona, Respondents.

204

Messrs. Chalmers, Fennemore & Nairn and Mr. J. Early Craig, for Petitioners.

Mr. John J. Taheny, for Respondents.

McALISTER, J.—While discharging his duty as an employee of E. Payne Palmer, doing business

under the name of Vanadium Mining Company, William L. Connor was killed on October 18, 1926, in an accident arising out of and occurring in his employment. Both the employer and employee were subject to the Workmen's Compensation Law of this state, and the carrier of the insurance was the Home Accident Insurance Company. After a hearing before the Industrial Commission, which established the fact that Connor left no dependents, that body made an order directing the insurance carrier to pay the burial expenses of $150 and the further sum of $850 for the benefit of the rehabilitation fund of the state. The petitioners, being dissatisfied with this order, asked for a rehearing. This was denied, and they have brought the proceedings here by *certiorari,* asking this court to set aside that portion of the order directing the payment of $850, but raising no objection to the item of $150.

The ground upon which a rehearing was sought and the petition in this court based, is that the provision of the Workmen's Compensation Law under which this portion of the award was made—subdivision 9, division (A) of section 70, chapter 83, Session Laws of 1925—is unconstitutional and void in so far as it directs the payment of $850 for the purpose therein designated. It reads as follows:

"If there be no dependents, the employer or insurance carrier, or the state compensation fund, shall pay the burial expenses of the deceased, as provided herein, and shall pay into the state treasury the sum of $850. Such payments shall be held in a special fund for the purpose of enabling the commission to provide such additional awards as may be necessary to enable injured employees to accept the benefits of any Act that may be passed by the Legislature of Arizona, or the Congress of the United States, or both assemblies jointly, to provide for the promotion of vocational rehabilitation of persons disabled in industry or otherwise, and their return to safe employment."

The constitutionality of this provision is assailed upon several grounds, but the one upon which petitioners chiefly rely is that it embraces a subject not covered in section 8 of article 18 of the Constitution of the state of Arizona, as amended in 1925, pursuant to chapter 82, Session Laws of that year, and consequently that it and the award made under it are without constitutional warrant or support, and are therefore void. The following is the exact language of this section:

"Section 8. The Legislature shall enact a Workmen's Compensation Law applicable to workmen engaged in manual or mechanical labor in all public employment whether of the state, or any political subdivision or municipality thereof as may be defined by law and in such private employments as the Legislature may prescribe by which compensation shall be required to be paid to any such workman, in case of his injury and to his dependents, as defined by law, in case of his death, by his employer, if in the course of such employment personal injury to or death of any such workman from any accident arising out of and in the course of, such employment, is caused in whole, or in part, or is contributed to, by a necessary risk or danger of such employment, or a necessary risk or danger inherent in the nature thereof, or by failure of such employer, or any of his or its agents of employee or employees, to exercise due care, or to comply with any law affecting such employment: Provided that it shall be optional with any employee engaged in any such private employment to settle for such compensation, or to retain the right to sue said employer as provided by this Constitution; and, provided further, in order to assure and make certain a just and humane compensation law in the state of Arizona, for the relief and protection of such workmen, their widows, children or dependents, as defined by law, from the burdensome, expensive and litigious remedies for injuries to or death of such workmen, now existing in the state of Arizona, and producing uncertain and unequal compensation therefor, such employee, engaged in such private employment, may exercise

the option to settle for compensation by failing to reject the provisions of such Workmen's Compensation Law, prior to the injury."

It is the contention of petitioners that this provision empowers the legislature to enact a Workmen's Compensation Law applicable to workmen engaged in certain employments, by which compensation shall be required to be paid by the employer to his workmen in case of injury and to their dependents in case of death. In other words, their position is that it authorizes legislation compelling the employer to pay compensation to his employees and their dependents, but not to the employees of any other employer or to the state for their benefit, and consequently that the provision that an employer shall pay into the state treasury the sum of $850, to be used for the promotion of vocational rehabilitation of persons disabled in industry or otherwise, when the employee killed is without dependents, embraces a class, the workmen of other employers, not enumerated in or contemplated by section 8, article 18, as amended, and is therefore without constitutional warrant.

In support of this view the case of *Yosemite Lumber Co. et al.* v. *Industrial Accident Commission of California et al.,* 187 Cal. 774, 20 A. L. R. 994, 204 Pac. 226, is cited, and a reading of that opinion discloses that, under a constitutional mandate somewhat similar to section 8, as amended, the court did hold that a provision in an act for the vocational re-education and rehabilitation of workmen disabled in industry, pretty much the same as subdivision 9, *supra,* was invalid, and based its ruling upon the ground that the express grant of power to require employers to compensate their workmen and their dependents implies that the power to compel them to compensate the state for the benefit of the workmen of others is not granted. "The language of neither

one of these parts of the section shows or expresses,'' the court said, ''an intent to add another liability to that expressly stated,'' and it held that the maxim, ''The expression of one thing is the exclusion of another,'' was applicable.

There is no question but that this view is correct, when the power to enact legislation does not exist independently of the Constitution, because a provision in that instrument directing the legislature to enact particular legislation necessarily carries with it no authority to enact something not included therein. But, when such power does exist, irrespective of the Constitution, it is not lost by a provision therein making it the duty of the legislature to enact something else relating to the same subject, because, unlike Congress, whose only powers are those granted by the Constitution of the United States, the legislatures of the states have all legislative power, except that withheld from them by the state Constitutions, or surrendered to the federal government. In *Clark* v. *Boyce*, 20 Ariz. 544, 185 Pac. 136, this court said:

''The Legislature has all power not prohibited to it by the state or federal Constitution.''

In *Inspiration Consolidated Copper Co.* v. *Mendez*, 19 Ariz. 151, 166 Pac. 278, it used this language:

''The legislative power of the state is not controlled nor controllable by simple mandatory directions given by means of constitutional provisions which direct action, but do not restrict action on the part of the Legislature. When the Legislature is not constitutionally restricted, it may act or not as the occasion may seem proper, and in acting may pass any law the Legislature deems for the welfare of the state, unless prohibited by some positive constitutional provision, and all such laws not so prohibited are valid.''

In construing section 6, article 9, Constitution of this state, which provides that ''incorporated cities,

towns and villages may be vested by law with power to make local improvements by special assessments, or by special taxation of property benefited," this court, in *Brown* v. *Electrical District No. 2*, 26 Ariz. 181, 223 Pac. 1068, used the following language:

"It is contended that this affirmative investiture of power in certain named municipal corporations to make local improvements by special assessments, or by special taxation of property benefited, is equivalent to the denial of such power to all other corporations, including, of course, hydroelectrical irrigation corporations. This position is not sustainable, for the reason that the Legislature has all power of legislation not expressly forbidden it by the state Constitution, or not surrendered to the federal government."

That the legislature could, under its general powers, enact a law requiring employers to pay the state a certain sum for the promotion of the vocational rehabilitation of those disabled in industry, the same as it could a Workmen's Compensation Law, both being within the police power of the state, there is no question. No affirmative investiture of power in the fundamental law to do either was required. "The state acted within its power, and neither arbitrarily nor unreasonably," said the Supreme Court of the United States in *Sheehan Co. et al.* v. *Shuler et al.*, 265 U. S. 371, 35 A. L. R. 1056, 68 L. Ed. 1061, 44 Sup. Ct. Rep. 548, "in providing that a portion of the compensation to injured employees in cases coming within the provisions of subdivisions 8 and 9 should not be required in the form of direct payments by their particular employers, but should be made from public funds established for that purpose by payments from employers whose own employees leave no beneficiaries." And notwithstanding the conclusion in the Yosemite Lumber Company case, referred to above, the court there recognized the legislative right to provide a

fund for the benefit of those disabled in industry. It said:

"It may be conceded that under its general powers the Legislature might provide a fund for the benefit of persons disabled in industry in this state and commit the administration of the fund to the Industrial Accident Commission, and might also levy a tax in some form to raise such fund."

Inasmuch, therefore, as there is in section 8 or elsewhere in the Constitution no express prohibition against the legislature's passing such a provision, it cannot be said that its right to do so is denied by the constitutional mandate to enact a Workmen's Compensation Law directing employers to compensate their employees for injuries received in accidents arising out of their employment and their dependents in case of death. Such a provision is merely a command to the legislature to enact a law requiring employers to do this much for their employees and their dependents, but in no sense implies that the power to compel them to do anything else looking toward the protection of those disabled in industry is thereby denied. If such a limitation had been intended, when the amendment of section 8 was prepared and submitted, it is reasonable to presume that language so clear in meaning as to be without doubt would have been used—very much the same as that expressly prohibiting the denial of the right of those engaged in private employment to choose between compensation and the right to sue—and not have permitted its existence to rest upon the application of a mere maxim of construction, which is never permitted to defeat the plain intent of the statute and under the authorities should be applied with great caution to constitutional provisions relating to the legislative branch of the government. *State ex rel. Moody* v. *Bryan,* 50 Fla. 293, 39 South. 929. "The constitutional mandate, *supra,*"

said this court in *Inspiration Consolidated Copper Co.* v. *Mendez, supra,* when discussing the validity of the Employers' Liability Law (Civ. Code 1913, pars. 3153–3162) enacted pursuant to the mandate in section 7, article 18, of the Constitution, "in no manner controls the legislature in the adoption by it of any provision of the Employers' Liability Law, unless it attempts to place liability upon an employer for the death or injury of an employee killed or injured by such employee's own negligence."

Petitioners contend, further, that the portion of subdivision 9 providing for the payment in question is a tax measure, and the $850 to be paid a tax, and that it contravenes section 1, article 9, of the Constitution of Arizona, reading as follows:

"The power of taxation shall never be surrendered, suspended, or contracted away. All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax, and shall be levied and collected for public purposes only."

It is obvious that the tax referred to in this section is a tax on property, and not a tax on an occupation or business. This court so held in *Re Auxiliary Eastern Canal Irrigation District,* 24 Ariz. 163, 207 Pac. 614, when it said that it "relates to the revenue required for the general purpose of government, state and municipal." It is equally clear that the $850 subdivision 9 requires to be paid is not a tax on property at all, but a part of the compensation the employer, his insurance carrier, or the state compensation fund is compelled to pay, when the employee killed in the course of his employment leaves no dependents. It is just as much a part of the expense the employer must bear or the insurance carrier assume as the amounts to be paid directly to the employee or his dependents, because it is imposed for the same general purpose,

the promotion of the welfare of those disabled in industry, and in the exercise of the same power, the police power of the state. The fact that it reaches the injured employee for whom it is intended through a somewhat different channel—that is, is paid into the state treasury and held in a special fund, to provide in the manner stated for the promotion of the vocational rehabilitation of persons disabled in industry—does not give it a tax status different in any degree from that of the compensation that must be paid directly to employees or their dependents. Being imposed for the same purpose, and in the exercise of the same power, it is necessarily the same kind of tax as other compensation, and under all the authorities this is not a tax on property, but a tax on occupation or business.

A very forcible statement of the law on this point is found in *State ex rel. Davis-Smith Co.* v. *Clausen,* 65 Wash. 156, 37 L. R. A. (N. S.) 466, 117 Pac. 1101, and we can do no better than give the following excerpt from that opinion:

"The third principal objection to the constitutionality of the act is that it violates the provisions of the Constitution designed to secure equal and uniform taxation of property for public purposes. As the charge laid on the persons engaged in the industries named in the act is a pecuniary burden imposed by public authority, it partakes of the nature of a tax, and in the language of a distinguished judge discussing a similar question, 'for many purposes might be so spoken of without harm.' But it is manifest that it is not a 'tax' in the sense the word is used in the sections of the Constitution to which reference is here made. No accession to the public revenue, general or local, is authorized or aimed at. The purpose of the exaction is entirely different. It is to be used, not to meet the current expenses of government, but to recompense employees of the industries on whom the burden is imposed for injuries received by them while engaged in the pursuit of their employments. It is the con-

sideration which the owners of the industries pay for the privilege of carrying them on. It is therefore in the nature of a license tax, and can be justified on the principle of law that justifies the imposition and collection of license taxes generally. . . . ''

Under the great weight of authority, a tax on occupation, business, etc., is not, in legal contemplation, a tax on property, which falls within the inhibition imposed by the usual constitutional provision in relation to uniformity of taxation.

The distinction between the taxing power and police power was pointed out by this court in *Smith* v. *Mahoney*, 22 Ariz. 342, 197 Pac. 704, in approving the following excerpt from 22 Amer. & Eng. Encyclopedia of Law (2d ed.), 917:

"That the taxing power is exercised for the raising of revenue, while the police power is exercised only for the purpose of promoting the public welfare, and though this end may be attained by taxing or licensing occupations, yet the object must always be regulation and not the raising of revenue, and hence the restrictions upon the taxing power do not apply."

To substantiate their contention that the $850 is a tax on property petitioners cite two cases, *People* v. *Yosemite Lumber Co.*, 191 Cal. 267, 216 Pac. 39, and *Bryant* v. *Lindsay*, 94 N. J. L. 357, 110 Atl. 823, upon which they chiefly rely. The New Jersey case is not in point, though the court did hold that the $400, which an act of the legislature, separate and distinct from the Workmen's Compensation Law and in no way amendatory or supplementary thereof, required employers to pay in all cases in which an employee killed left no dependents, was a tax on property, and therefore unconstitutional. This holding, however, was based principally upon the purpose for which the payment was required; the law providing that it be made to the commissioner of labor, to be used in defraying the expenses of the

state labor bureau, and the court said that this was "nothing more nor less than a tax imposed for the purpose of supporting the expense of a state agency," very much the same as if it had been prescribed that it "be turned into the state or county treasury, to be used in helping to defray the salaries of the various judges of the courts of common pleas," whose duties required them to try cases arising under the Compensation Law. The other case is based on provisions somewhat similar to Arizona's, and is authority for petitioner's position; but we are clearly of the view, notwithstanding the holding therein, that the payment in question is not a property, but an occupation, tax. The great weight of authority is to this effect.

It is contended that the statute providing for the payment of the $850 in question is unconstitutional and void, because it deprives petitioners of their property without due process of law, and denies them the equal protection of the law, as guaranteed by the fourteenth amendment to the Constitution of the United States, and by section 4, article 2, Constitution of the state of Arizona. The argument is that this provision is arbitrary, unreasonable, and discriminatory, in that it provides for a special classification, consisting of only those employers coming under the Workmen's Compensation Act who employ persons without dependents, but with the right to claim compensation, and that it is not required that the beneficiaries of the payments thus made be employees of the persons whose payments create the fund, nor the dependents of such employees, but merely that they be employees disabled in industry. We think it perfectly plain that, though subdivision 9 does provide that only those employers who happen to have an employee without dependents killed shall make the payments in question, and that the beneficiaries of the fund may be employees of

employers other than those making the payments, neither of these facts renders it arbitrary or discriminatory, because the contingency upon the occurrence of which the employer becomes liable, is just as applicable to one employer as another. And perhaps it was thought that it would tend to place all employees upon a more nearly equal footing in the matter of securing employment, since the legislature may have entertained the idea that employees without dependents would be given the preference by some employers, in the absence of such provision, inasmuch as the accidental death of a workman without dependents would mean that the employer would pay the funeral expenses and nothing more.

It is necessary on this phase of the case to do no more than give an excerpt from a decision of the Supreme Court of the United States in *Sheehan Co.* v. *Shuler, supra,* in which that court held in plain and unmistakable language that such a provision violated neither the due process nor the equal protection clause of the Constitution of the United States. It said:

"The substance of these two provisions is that, when an injury causes the death of an employee leaving no beneficiaries, the employer or other insurance carrier shall pay the state treasurer the sum of $500 for each of two special funds: One to be used in paying additional compensation to employees incurring permanent total disability after permanent partial disabilities; and the other, in the vocational education of employees so injured as to need rehabilitation. . . . In such a case, however, as in the case of an injury requiring vocational rehabilitation, it is the theory of the law that such additional compensation to the injured employee should not be required of the particular employer in whose service the injury occurred, but should be provided out of general funds created by payments required of all employers when injuries resulting in the death of their own employees leaving no benefi-

ciaries, do not otherwise create any liability under the Compensation Law.

"We do not think that the due process clause of the Fourteenth Amendment requires that such additional compensation to injured employees of the specified classes, should be paid by their immediate employers, or prevents the legislature from providing for its payment out of general funds so created. . . . Nor are these provisions in conflict with the equal protection clause. The contention of the companies is that the prescribed awards are in the nature of a tax imposed upon the happening of a contingency, and are of unequal application; that is, that they are imposed only upon such employers as happen to have employees who are killed without leaving survivors entitled to compensation. However, this is not a discrimination between different employers, but merely a contingency on the happening of which all employers alike become subject to the requirements of the law. All are required to contribute, under identical conditions, to these special funds. *State Industrial Commission* v. *Newman,* 222 N. Y. 368, 118 N. E. 794.''

In *Salt Lake City* v. *Industrial Commission,* 58 Utah 314, 18 A. L. R. 259, 199 Pac. 152, the Supreme Court of that state reached the same conclusion upon a statute identically the same in effect as subdivision 9 of the Workmen's Compensation Act of this state.

Petitioners base their contention that this provision is arbitrary and discriminatory upon another ground, namely, the fact that it provides that the fund paid may be used for the vocational rehabilitation, not only of those disabled in industry but of those disabled otherwise than in industry as well. It is true the wording is "to provide for the promotion of vocational rehabilitation of persons disabled in industry *or otherwise,* and their return to safe employment," and if this language be given full effect it would entitle one disabled otherwise than in industry to receive the benefits of the fund thus created, the same as it would one disabled in industry. But since the theory of Workmen's Compensation Laws

is that industry should bear the burden of its own accidents, it is clear that employers alone cannot be required to contribute to the vocational rehabilitation of those injured otherwise than in industry, and hence it follows that, in so far as this provision authorizes persons disabled otherwise than in industry to enjoy its benefits, it is invalid.

However paragraph 89 of the Workmen's Compensation Act provides that "any adjudication or invalidity of any part of this act shall not affect the validity of the act as a whole or any part thereof," and inasmuch as the words "or otherwise" may be eliminated therefrom without in any way defeating the purpose of the act, or of subdivision 9, they should be excluded, and·when this is done the benefits under this provision will be restricted to those disabled in industry. Thus construed, the constitutionality of subdivision 9 is unquestioned, and what we have said throughout this opinion has been with a realization that the words, ."or otherwise," were out of harmony with the general purpose of the act, and should be deleted.

There are one or two other assignments, but in view of what we have said it is unnecessary to discuss them. It is plain that they are without merit.

The award is affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.