[Civil No. 2745.  Filed February 12, 1929.]

[274 Pac. 634.]

ATKINSON, KIER BROTHERS, SPICER COMPANY, a Corporation, Petitioner, v. THE INDUSTRIAL COMMISSION OF ARIZONA, and R. B. SIMS, BURT H. CLINGAN, and WILLIAM HUNTER, Respondents.

See Constitutional Law, 12 **C. J.**, sec. 52, p. 707, n. 28, 29, sec. 167, p. 746, n. 5.

Workmen's Compensation Acts, **C. J.**, sec. 6, p. 11, n. 57, sec. 7, p. 15, n. 11.

Mr. W. L. Barnum, Mr. Robert McMurchie, and Mr. W. W. Rhodes, for Petitioner.

Mr. John J. Taheny, for Respondents.

Mr. L. M. Laney, for Beneficiaries.

McALISTER, J.—While building the Coolidge Dam at San Carlos, Arizona, the Petitioner, Atkinson, Kier Brothers, Spicer Company, a corporation, had in its employ as chief engineer and general superintendent of construction one Edward Anthony Wright, who on September 12, 1927, met his death by coming in contact with a live wire during a trip of inspection of the work. The Industrial Commission awarded compensation to his wife and son, and upon a rehearing affirmed its order, and the petitioner claiming that the Commission was without jurisdiction to make the award has brought the matter here for review.

The deceased was not engaged in manual or mechanical labor at the time of his death, and for this reason the petitioner contends that his dependents are not entitled to compensation. This view grows out of the construction it claims should be placed upon section 8, article 18 of the Constitution of this state, which directed the legislature to enact a Workmen's Compensation Law "applicable to workmen engaged in manual or mechanical labor." This section was amended in 1925 (see Laws 1925, chap. 82) and since then has read as follows:

"The legislature shall enact a Workmen's Compensation Law applicable to workmen engaged in manual or mechanical labor in all public employment whether of the State, or any political subdivision or municipality thereof as may be defined by law and in such private employments as the Legislature may prescribe

by which compensation shall be required to be paid to any such workman, in case of his injury and to his dependents, as defined by law, in case of his death, by his employer, if in the course of such employment personal injury to or death of any such workman from any accident arising out of and in the course of, such employment, is caused in whole, or in part, or is contributed to, by a necessary risk or danger of such. employment, or a necessary risk or danger inherent in the nature thereof, or by failure of such employer, or any of his or its agents of [or] employee or employees, to exercise due care, or to comply with any law affecting such employment; provided that it shall be optional with any employee engaged in any such private employment to settle for such compensation, or to retain the right to sue said employer as provided by this Constitution; and, provided further, in order to assure and make certain a just and humane compensation law in the State of Arizona, for the relief and protection of such workmen, their widows, children or dependents, as defined by law, from the burdensome, expensive and litigious remedies for injuries to or death of such workmen, now existing in the State of Arizona, and producing uncertain and unequal compensation therefor, such employee, engaged in such private employment, may exercise the option to settle for compensation by failing to reject the provisions of such Workmen's Compensation Law prior to the injury.

"The percentages and amounts of compensation provided in House Bill No. 227 enacted by the Seventh Legislature of the State of Arizona, shall never be reduced nor any industry included within the provision of said House Bill No. 227 eliminated except by initiated or referred measure as provided by this Constitution."

The act passed in compliance with this mandate, chapter 83, Session Laws of 1925, applies not merely to those engaged in manual or mechanical labor but to workmen in all lines of endeavor where there are as many as three or more regularly employed in the same business or in or about the same establishment,

except agricultural workers not employed in the use of machinery, and domestic servants (sections 44 and 45 of said chapter), and because of this fact it is contended that the act is without constitutional sanction and void in so far as it includes workmen engaged in labor that is nonmanual or nonmechanical. The mandate does not expressly prohibit the legislature from providing compensation for such workmen but it is argued that it does so by implication, because by applying the well-known maxim, "*expressio unius est exclusio alterius*," the enumeration of those engaged in manual or mechanical labor as beneficiaries of the law to be enacted has the effect of excluding therefrom those not mentioned, namely, nonmanual and nonmechanical workmen. This contention would undoubtedly prevail if the legislature's source of power to enact a Workmen's Compensation Law were this constitutional provision, because in that event only such legislation as it prescribes or is necessarily incidental thereto could have been included in the law directed. Under such circumstances the command to provide compensation for workmen engaged in manual or mechanical labor would not only be no authority to treat those engaged in nonmanual or nonmechanical labor likewise but a prohibition against doing so. *Home Accident Ins. Co.* v. *Industrial Commission*, 34 Ariz. 201, 269 Pac. 501.

However, we are not here confronted with this situation. This constitutional provision is not a grant of power but a command to enact a Workmen's Compensation Law applicable to workmen engaged in certain employments; hence, it gave the legislature no right it did not already possess, because its power to enact such a law without express constitutional authority cannot be questioned. Both Employers' Liability and Workmen's Compensation Laws may be passed in the exercise of the police power of the state

which is possessed by and adheres in every sovereign state of the American Union, and is not a grant from or under any written Constitution. 6 R. C. L. 183. "Laws regulating the responsibility of employers for the injury or death of employees arising out of the employment," said the court in *New York Central Railroad Co.* v. *White,* 243 U. S. 188, Ann. Cas. 1917D 629, L. R. A. 1917D 1, 61 L. Ed. 667, 37 Sup. Ct. Rep. 247, "bear so close a relation to the protection of the lives and safety of those concerned that they properly may be regarded as coming within the category of police regulations."

It being true, therefore, that the legislature could in the exercise of its general power provide that workmen employed in nonmechanical employment should receive compensation under the same terms and conditions as those following mechanical labor, we are of the view that this inherent power is in no way abridged by the mandate to enact a Workmen's Compensation Law applicable to workmen engaged in manual or mechanical labor. There is no necessary implication that it has this effect, because "a power clearly legislative in its character," as said by the court in *Imperial Irrigation Co.* v. *Jayne,* 104 Tex. 395, Ann. Cas. 1914B 322, 138 S. W. 575, and "not expressly denied to the legislature, ought not to be held denied by implication, unless its exercise would interfere with, frustrate, or to some extent defeat the exercise of a power expressly granted," and to give nonmanual and nonmechanical workmen the benefits of the Workmen's Compensation Law neither militates against nor in the slightest degree interferes with the carrying out of the purpose of the mandate directing the enactment of it. The mere reference to the thing this provision was intended to accomplish discloses this. The aim was to provide a method by which claims growing out of injuries received by workmen

engaged in manual or mechanical employments might be settled upon the theory that industry should bear the burden of its own accidents and necessarily to do away with the old system of proceeding by an action at law based upon negligence which was so expensive and so uncertain that in many instances it meant the defeat of legitimate claims as well as the occasional success of one without merit, at least to the full extent of recovery, and it is evident that the non-mechanical workman's right to settle his claim through the new method in no way hampers the mechanical workman in doing the same thing. It is not merely no detriment to the latter to give nonmechanical workmen this privilege, but a positive benefit to those engaged in nonmechanical labor, since they stood in equal need with mechanical workmen of being recompensed for any injury suffered and were confronted with the same hardships in enforcing their claims.

It is inconceivable, in view of this, that the supporters of the constitutional mandate meant to deprive the legislature of the right to provide that nonmechanical workmen should receive the benefits of the Compensation Law. That they manifested such solicitude for those engaged in manual and mechanical labor as to name them specially in the mandate is due to the fact that their occupation is more dangerous and that a much greater percentage of them than of those engaged in nonmechanical employments is injured, but in the absence of a special prohibition to this effect it would be a rather harsh accusation to say that a desire to prevent the latter from receiving the benefits of the Compensation Law found a place in their deliberations merely because so few of them are injured, when to give it to them would not interfere in the slightest degree with the operation of the law as to those specially mentioned.

And the same is true when considered from the standpoint of the employer. In case of the injury of an employee the Workmen's Compensation Law is as satisfying to the employer of nonmechanical labor who has complied with its terms as it is to the employer of mechanical labor, and while at first blush it might seem unfair to require one employing nonmanual or nonmechanical labor to carry insurance for the protection of his employees since the probability of accident to them is so small, yet this thought entirely disappears the moment one's mind reverts to the fact that the rate of premium paid by him, compared with that required of the employer of manual or mechanical labor, is small accordingly.

The foregoing is not only in line with the great weight of authority but a recent decision of this court was to the same effect. *Home Accident Ins. Co.* v. *Industrial Commission, supra.* We held there that notwithstanding the Constitution, the same provision with which we are here concerned, designates employees and their dependents as beneficiaries of the Workmen's Compensation Law to be enacted the special enumeration of them did not impliedly prevent the legislature in the exercise of its general powers from requiring the employer, in case of the death of an employee without dependents, to pay into the State Treasury $850 to be used "for the promotion of vocational rehabilitation of persons disabled in industry," though this means that in many instances the employees of other employers than those making the payment will be benefited by it. It is clear that the direction to provide compensation for those following mechanical labor is no more exclusive of the right to make the same provision for those engaged in nonmanual or nonmechanical labor than is the command to require employers to pay compensation to their employees and their dependents prohibitive of

the right to compel them to pay this $850. This language was used:

"But, when such power does exist, irrespective of the Constitution, it is not lost by a provision therein making it the duty of the Legislature to enact something else relating to the same subject, because unlike Congress, whose only powers are those granted by the Constitution of the United States, the Legislatures of the states have all legislative power, except that withheld from them by the state Constitutions, or surrendered to the federal government. . . .

"Such a provision is merely a command to the Legislature to enact a law requiring employers to do this much for their employees and their dependents, but in no sense implies that the power to compel them to do anything else looking toward the protection of those disabled in industry is thereby denied. If such a limitation had been intended, when the amendment of section 8 was prepared and submitted, it is reasonable to presume that language so clear in meaning as to be without doubt would have been used—very much the same as that expressly prohibiting the denial of the right of those engaged in private employment to choose between compensation and the right to sue—and not have permitted its existence to rest upon the application of a mere maxim of construction, which is never permitted to defeat the plain intent of the statute and under the authorities should be applied with great caution to constitutional provisions relating to the legislative branch of the government."

The Constitution of California (art. 9, § 7) provided that text-books "shall be furnished and distributed by the state free of cost or any charge whatever, to all children attending the day and evening elementary schools of the state," and in *Macmillan Co.* v. *Clarke,* 184 Cal. 491, 17 A. L. R. 288, 194 Pac. 1030, the Supreme Court of that state, in holding that in the absence of negative terms this was not a prohibition against furnishing free books for high schools, used this language:

"We see no grounds for holding that the express and mandatory requirement of our Constitution that free text-books shall be furnished to pupils of the elementary schools should be construed as a limitation upon the power of the Legislature to also furnish free text-books for the use of high school pupils. It may well be that it was considered expedient in this as in other respects to require legislative action in behalf of the elementary schools, and to leave the provisions for more advanced education to the discretion of the Legislature. Express enumeration of legislative powers is not exclusive of others not named unless accompanied by negative terms."

In *Brown* v. *Electrical District No. 2,* 26 Ariz. 181, 223 Pac. 1068, it was said "the Legislature has all power of legislation not expressly forbidden it by the state Constitution or not surrendered to the federal government," and from numerous authorities to the same effect the following are cited: *In re Kindergarten Schools,* 18 Colo. 234, 19 L. R. A. 469, 32 Pac. 422; *State ex rel. Berge* v. *Lansing,* 46 Neb. 514, 35 L. R. A. 124, 64 N. W. 1104; *College of City of New York* v. *Hylan,* 205 App. Div. 372, 199 N. Y. Supp. 804, affirmed in 236 N. Y. 504, 142 N. E. 297; *Commonwealth* v. *Wells,* 196 Ky. 262, 244 S. W. 675; *State* v. *Kane,* 15 R. I. 395, 6 Atl. 783; *State* v. *Weiss,* 84 Kan. 165, 36 L. R. A. (N. S.) 73, 113 Pac. 388; *Prairie Oil & Gas Co.* v. *District Court,* 71 Okl. 32, 174 Pac. 1056; *Higgins* v. *Prater,* 91 Ky. 6, 14 S. W. 910; *Evers* v. *Hudson,* 36 Mont. 135, 92 Pac. 462; *McGrew* v. *Missouri Pac. Ry. Co.,* 230 Mo. 496, 132 S. W. 1076; 1 Story on the Constitution (4th ed.), § 448.

The petitioner relies mainly upon *State* v. *Osborne,* 14 Ariz. 185, 125 Pac. 884, in which it was held that an act of the legislature approved June 14, 1912 (Laws 1912, Extra Sess., chap. 24), providing that an election of state, county and precinct officers should be held on the first Tuesday after the first Monday in November, 1912, was impliedly prohibited by sec-

tion 11, article 7 of the Constitution which said that a general election of the same officers should be held on the first Tuesday after the first Monday in November of the first even-numbered year after the year in which Arizona was admitted to statehood, and biennially thereafter. Arizona was admitted in 1912, February 14th, and the next even-numbered year was 1914. The first election of state, county and precinct officers after Arizona became a state was necessarily held under the Constitution and a legislative act requiring it to be held before the date fixed by the Constitution was in conflict therewith and as clearly prohibited as though that instrument had contained express language to that effect. It is perfectly plain that the legislative act could not be carried out without defeating the provision of the Constitution on the same subject, and equally apparent that the statements of the court under that situation would not apply when the power it is contended is impliedly prohibited can be exercised without defeating or in the least interfering with that expressly directed.

If, under the rules of construction, there existed any doubt or uncertainty relative to an intention impliedly to prohibit the legislature from including other than those engaged in manual or mechanical labor in the Workmen's Compensation Law, a consideration of section 8, article 18, as a whole leads to the definite conclusion that there was no such intention. The last paragraph, as well as that portion permitting an employee to exercise the option to settle for compensation by failing to reject it prior to the injury, was not a part of this section originally but became such in 1925 when, in the form in which it was proposed to be amended, it was submitted by the legislature and approved by the people. House Bill No. 227, referred to therein, is the Workmen's Compensation Law, the constitutionality of a portion of which is here at-

tacked, and was enacted by the legislature before the amendment of section 8, article 18, was adopted by the people, or even submitted to them, but by its own terms its taking effect was postponed until the amendment had been voted on by the people and by them approved. And, as stated above, it includes every industry in the state, whether mechanical or non-mechanical, in which there are three workmen regularly employed in the same business, or in or about the same establishment, except agricultural workers not employed in the use of machinery and domestic servants, and it will be observed that under the specific language of this amendment none of the percentages or amounts of compensation fixed in this bill shall ever be reduced, nor any of the industries included within its provisions eliminated, except by a vote of the people. Undoubtedly this paragraph would not have become a part of section 8 if either the legislature or the people had felt that the enumeration of manual and mechanical workmen as beneficiaries of the Compensation Law to be enacted stood in the way of such laws being applied to those engaged in nonmanual or nonmechanical labor. An implied prohibition resting upon the application of a maxim of construction which "under the authorities should be applied with great caution to constitutional provisions relating to the legislative branch of the government" (*Home Accident Insurance Co.* v. *Industrial Commission, supra*), cannot prevail in the face of an intention to the contrary so clearly expressed as in this instance.

The award is affirmed.

LOCKWOOD, C. J., and ROSS, J., concur.