[S. F. No. 9556. In Bank.—January 27, 1922.]

YOSEMITE LUMBER COMPANY (a Corporation), et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION LAW — FATAL INJURY TO EMPLOYEE WITHOUT DEPENDENTS—PAYMENT OF EMPLOYER TO STATE—CREATION OF FUND FOR DISABLED WORKMEN—POWER OF LEGISLATURE—CONSTITUTIONAL LAW.—The legislature has not the power under section 21 of article XX of the constitution, as amended in 1919, vesting it with power to create and enforce a complete system of

---

1. Constitutionality of Workmen's Compensation Act, notes, Ann. Cas. 1912B, 174; Ann. Cas. 1915A, 247; Ann. Cas. 1916B, 1286; Ann. Cas. 1917E, 401, 839; Ann. Cas. 1918B, 611; 34 L. R. A. (N. S.) 162; 37 L. R. A. (N. S.) 466; L. R. A. 1916A, 409; L. R. A. 1917D, 51.

workmen's compensation, to require an employer to pay to the state a certain sum whenever one of his workmen who has no dependents is killed by an injury received in the course of his employment, and to confer jurisdiction on the Industrial Accident Commission to adjudicate the liability of the employer therefor to the state, and the act of the legislature (Stats. 1919, p. 273) so providing, enacted for the purpose of creating a fund for the promotion of vocational re-education and rehabilitation of persons disabled in industry in this state and to provide funds for the insurance bureau of the commission, is unconstitutional.

[2] Constitutional Law—Fund for Disabled Workmen—Jurisdiction of Industrial Accident Commission — Power of Legislature.—While, under its general powers, the legislature might provide a fund for the benefit of persons disabled in industry in this state and commit the administration of the fund to the Industrial Accident Commission, and might also levy a tax in some form to raise such fund, any disputes that might arise concerning such tax would be cognizable only by the courts established by or under the provisions of article VI of the constitution, since no section of the constitution gives the legislature power to confer jurisdiction thereof upon such commission.

PROCEEDING in Certiorari to review an award of the Industrial Accident Commission. Award annulled.

The facts are stated in the opinion of the court.

A. E. Bolton and Arthur W. Bolton for Petitioners.

Adolphus E. Graupner, U. S. Webb, Attorney-General, and Warren H. Pillsbury for Respondents.

SHAW, C. J.—This is a proceeding in *certiorari*, under the Workmen's Compensation, Insurance and Safety Act [Stats. 1917, p. 831], to review an order of the Industrial Accident Commission requiring the Yosemite Lumber Company to pay to the state of California the sum of $350 for the death of John Moore, who was killed by an injury arising out of, and in the course of, said employment. Moore left no dependents surviving him.

The order was made under the authority of the act of 1919 (Stats. 1919, p. 273). The sole question for decision, as we view the case, is whether or not the said act gives the

commission jurisdiction to adjudicate the liability of the employer to the state.

The act provides that when an employee receives a fatal injury, of a kind that is compensable under the provisions of the Workmen's Compensation, Insurance and Safety Act, and "does not leave surviving him any person entitled to a death benefit, the employer . . . shall pay into the treasury of the State of California the sum of three hundred and fifty dollars for each such fatal injury in addition to any other payments under the provisions of said Compensation Act," not exceeding three times the average annual earnings of such employee, and that the moneys so paid "shall be covered into a special fund to be known as the 'industrial rehabilitation fund,' which fund is hereby created and appropriated for the purposes set forth in this act" (sec. 1).

It further declares that said fund may be used by the Industrial Accident Commission "for the promotion of vocational re-education and rehabilitation of persons disabled in industry in this state" (sec. 2); that the remainder of the fund which may be left after the commission shall have used so much thereof as they deem best in such promotion shall be placed "semi-annually, to the credit of the accident prevention fund, established by said compensation act" (sec. 3; also sec. 51, Compensation Act, Stats. 1917, p. 865). When five thousand dollars "shall have been accumulated in said fund" it is to be deposited "with the State Compensation Insurance fund as a revolving fund." From this "revolving fund" the payments so required by the aforesaid sections 1, 2, and 3 are to be made, on the order of the Industrial Accident Commission, and the "state treasurer shall from time to time, upon the order of the commission, reimburse said state compensation insurance fund from the industrial rehabilitation fund for expenditures made from said revolving fund." The expenses of administration of the state compensation insurance fund in carrying out the duties imposed by the act are also "to be paid from said state industrial rehabilitation fund," all under the direction of the commission (sec. 4). The commission is given jurisdiction to determine the liability of such employer and to require the payment by him of the $350 to the state in such cases by proceedings before it in the same manner as provided in the Workmen's Compensation, Insurance and

Safety Act; "provided further" that at any time after it is paid into the state treasury any person claiming to be a dependent of the employee may establish such dependency to the satisfaction of the commission and thereupon the state may be required to pay to said dependent the said $350, or whatever thereof is necessary to meet his claim (secs. 5 and 6).

The accident prevention fund referred to is used to support the "department of safety" carried on by the Industrial Accident Commission (secs. 33–52, Workmen's Compensation Act). The state compensation insurance fund mentioned is established by the Workmen's Compensation Act for the purpose of enabling the commission to carry on the business of an insurance carrier for employers, with respect to their liability under the act.

It will be seen from these provisions that the act makes no provision for compensation by the employer to the person injured, nor to the dependents of such person. The "compensation" contemplated by the act is only to be made when the workman who is killed by the injury leaves no dependents to be compensated, and it goes to other persons not related to the deceased workman nor connected with his employer. It goes to the state to enable it to carry on a benevolent enterprise for the benefit of a class of workmen throughout the state—and to provide funds for the insurance bureau of the Industrial Accident Commission. The true intent of the act is to provide for the creation of a general fund for these purposes.

The proceeding in which the order or award in question was made was begun by the state of California after the death of John Moore. In its petition it averred that Moore left surviving him no person dependent on him for support, nor any person entitled to a death benefit under the compensation act, and that, on account thereof, $350 was owing by the Yosemite Lumber Company to the state, under and by virtue of said act of 1919.

The act of 1919 purports to confer upon the commission the power to make orders determining and enforcing the liability which the act creates. It is contended on behalf of the commission that legislative authority to confer such power upon the commission is found in section 21, article XX, of the constitution, as amended in 1918. This claim

is contested by the petitioner, who asserts that it has no such effect.

Prior to the amendment of 1918 section 21 of article XX read as follows: "The legislature may by appropriate legislation create and enforce a liability on the part of all employers to compensate their employees for any injury incurred by the said employees in the course of their employment, irrespective of the fault of either party. The legislature may provide for the settlement of any disputes arising under the legislation contemplated by this section, by arbitration, or by an industrial accident board, by the courts, or by either, any or all of these agencies, anything in this Constitution to the contrary notwithstanding."

The following is the section as amended in 1918, [Stats. 1919, p. lxxv] : "The legislature is hereby expressly vested with plenary power, unlimited by any provision of this constitution, to create, and enforce a complete system of workmen's compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workmen for injury or disability, and their dependents for death incurred or sustained by the said workmen in the course of their employment, irrespective of the fault of any party. A complete system of workmen's compensation includes adequate provisions for the comfort, health and safety and general welfare of any and all workmen and those dependent upon them for support to the extent of relieving from the consequences of any injury or death incurred or sustained by workmen in the course of their employment, irrespective of the fault of any party; also full provision for securing safety in places of employment; full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects of such injury; full provision for adequate insurance coverage against liability to pay or furnish compensation; full provision for regulating such insurance coverage in all its aspects, including the establishment and management of a state compensation insurance fund; full provision for otherwise securing the payment of compensation; and full provision for vesting power, authority and jurisdiction in an administrative body with all the requisite governmental functions to determine any dispute or matter arising under such legis-

lation, to the end that the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without encumbrance of any character; all of which matters are expressly declared to be the social public policy of this state, binding upon all departments of the state government.

"The legislature is vested with plenary powers, to provide for the settlement of any disputes arising under such legislation by arbitration, or by an industrial accident commission, by the courts, or by either, any, or all of these agencies, either separately or in combination, and may fix and control the method and manner of trial of any such dispute, the rules of evidence and the manner of review of decisions rendered by the tribunal or tribunals designated by it; provided, that all decisions of any such tribunal shall be subject to review by the appellate courts of the state. The legislature may combine in one statute all the provisions for a complete system of workmen's compensation, as herein defined.

"Nothing contained herein shall be taken or construed to impair or render ineffectual in any measure the creation and existence of the Industrial Accident Commission of this state or the state compensation insurance fund, the creation and existence of which, with all the functions vested in them are hereby ratified and confirmed."

The power to determine whether or not the liability referred to in the first paragraph of the above section and imposed by this law exists against any person is judicial power. (*Western etc. Co.* v. *Pillsbury,* 172 Cal. 411, [Ann. Cas. 1917E, 390, 156 Pac. 491]; *Pacific C. C. Co.* v. *Pillsbury,* 171 Cal. 322, [153 Pac. 24]; *Carstens* v. *Pillsbury,* 172 Cal. 579, [158 Pac. 218]; *Marin W. & P. Co.* v. *Railroad Com.,* 171 Cal. 712, [Ann. Cas. 1917C, 114, 154 Pac. 864].) It is claimed that the new section authorizes the creation of a liability on employers in favor of the state for the benefit of workmen in general, and that it gives the legislature power to confer on the Industrial Accident Commission jurisdiction to determine disputes concerning such liability. The second paragraph of the section is the part which purports to give this power, if it is contained anywhere in the section. It gives no authority to create a tribunal for any other purpose or with any other judicial power than to settle the

"disputes arising under such legislation," referring to the legislation provided for in the first paragraph of the section. It is, therefore, apparent that when we have ascertained the kind and character of the disputes that may arise under the legislation authorized by the first part of the section, we have found the limits beyond which the judicial power and jurisdiction of the Industrial Accident Commission cannot go.

The first grant to the legislature by the new section is the grant of power "to create and enforce a complete system of workmen's compensation." This does not authorize the creation of a liability on any person to pay such "compensation," or require any person to contribute funds to support the proposed system. It does not purport to touch upon the subject of liabilities.

The next phrase of the new section empowers the legislature "in that behalf to create and enforce a liability on the part of any and all persons to compensate any and all of *their workmen* for injury or disability, and their dependents for death incurred or sustained by the said workmen in the course of their employment." This does not authorize the creation of a liability on the part of any person to compensate the workmen of other persons, nor the dependents of workmen of other persons. The phrase "their workmen" necessarily confines the persons to be compensated to workmen who are in the employ of the person who is made liable. This is also shown by the provision that if the workman is killed by an injury in the course of his employment, the compensation is to be made to his "dependents," thus excluding any idea of liability in such a case to provide for the welfare of workmen in general, or of a particular class of disabled workmen, in no way connected with the employer who is made liable for the particular injury. Nothing is added to the force of the provision by the use of the word "plenary." If the legislature has power to do a certain thing, its power to do it is always plenary. It is merely surplus verbiage.

The use in this clause of the words "any and all persons," in describing those made liable, and the words "any and all of their workmen," in describing those to be compensated, do not show an intent to empower the legislature to enlarge the liability against a particular employer for a

particular injury so as to include compensation to workmen in general as a class, or a contribution to a fund to be applied to the benefit of a class of persons, instead of to the dependents of the workman who may be killed by the injury.

Nor is such enlarged meaning given to the section by the use of the phrase ''complete system of workmen's compensation,'' in the opening clause, or by the elaborate definition of that phrase which follows the first sentence. The section mentions and describes but one kind of liability: the liability of ''any or all persons'' to compensate ''any or all of *their workmen.*'' This is in effect a provision to compel any person to compensate *his* workmen, which is but another form of saying that any employer shall compensate *his* employee, for an injury arising out of the employment, or the dependents of such employee, if the injury causes death to him. The language of neither one of these parts of the section shows or expresses an intent to add another liability to that expressly stated. In these circumstances the maxim ''*expressio unius, est exclusio alterius*'' is applicable, and the meaning to be inferred is that only which is explicitly stated. And particularly it should not be inferred or implied from such language that so novel and different a thing was intended as the liability to the state which is imposed by the act of 1919.

That there was no such thought in the minds of those who framed the amendment, or of the legislature that proposed it, is clearly indicated by the argument in favor of the amendment in the pamphlet distributed to the voters with the ballot at the election at which the amendment was adopted. The amendment was proposed by the legislature of 1917. Under section 1195 of the Political Code, when the legislature proposes an amendment to the constitution to be voted upon by the electors of the state, the author of such amendment and one member of the same house who voted with the majority in submitting the same shall be appointed as a committee to draft an argument giving the reasons for the adoption of such amendment. This argument is to be printed in a pamphlet and distributed to the voters with the sample ballot, to be used by the voter in preparing his vote and in studying the questions upon which he is to act. (Pol. Code, sec. 1195a.) It is to be assumed that the arguments prepared by the author of the amendment state

fairly and with reasonable fullness the meaning of the amendment and the effect it is expected to produce. The argument printed and distributed with the ballot upon the amendment here under consideration refers to the fact that the Workmen's Compensation Act had been in force for several years; that section 21 of the constitution, as it was, "failed to express sanction for the requisite scope of the enactment to make a complete and workable plan," which plan embraced, as essential components, compulsory compensation for injury and death irrespective of fault, safety provisions, insurance by the state, and administration of the system, and it then states that the original section contained nothing covering safety or insurance, and only meager authority for administration; that the law in force had apparently exceeded the scope of the amendment authorizing it, and that the amendment was designed to give authority for the legislation already enacted and to sanction the plan then in existence. This obviously refers to the extensive revision of the original Workmen's Compensation Act that was enacted at the same session, as well as to the original act, neither of which attempted to create such a liability as that provided by the act of 1919. There is no suggestion in the argument that the proposed amended section was intended to authorize the legislature to impose any liability upon employers of a character different from that already provided by the original section, and nothing to suggest to any voter the idea that it was for carrying on a system for the benefit of disabled workmen in general or for the levy of contributions to support such system upon employers in whose service men having no dependents were killed by injuries received in the course of their employment. It cannot be supposed that the author of the amendment, or the legislature that proposed it, intended to provide for such a scheme as that contained in the act of 1919 by language so illy adapted to suggest the idea as that contained in this section and that the voters should be inveigled into voting for it by an argument presented to them with the ballot which does not even mention it.

In so far as the act purports to exact from employers a sum to be used by the state for disabled workmen in general, it is in reality a taxing law. a revenue measure. It requires any employer to pay to the state the sum of $350

whenever one of his workmen who has no dependents is killed by an injury received in the course of his employment, and the fund thus raised is to be used for vocational re-education of workmen not connected in any way with such employer, and the surplus, if any, to go to pay the expenses of the state in carrying on the department or bureau administered by the Industrial Accident Commission, all of which are public purposes. This is purely a tax. "A tax is a charge upon persons or property to raise money for public purposes." (*Perry* v. *Washburn,* 20 Cal. 350.) A tax "includes every charge upon persons or property, imposed by or under the authority of the legislature, for public purposes." (*Madera* v. *Black,* 181 Cal. 310, [184 Pac. 400]; 1 Cooley on Taxation, p. 6.) The amended section of the constitution contains no suggestion of a design to provide for raising revenue by a tax of such an extraordinary character as this statute proposes. We need not consider the question whether as a tax it would not be void because of its unfair discrimination. We are of the opinion that the language of the section gives no warrant for the conclusion that it was intended to provide for taxation of any kind.

[1] Our conclusion is that section 21 of article XX, as amended in 1918, did not authorize the legislature to impose a liability on an employer to pay money to the state for the purposes specified in the act of 1919. It follows by necessity that said section gives no authority to the legislature to confer on the Industrial Accident Commission jurisdiction to determine any dispute that may arise concerning the liability of employers sought to be imposed by said act of 1919.

[2] It may be conceded that under its general powers the legislature might provide a fund for the benefit of persons disabled in industry in this state and commit the administration of the fund to the Industrial Accident Commission, and might also levy a tax in some form to raise such fund. But any disputes that might arise concerning such tax would be cognizable only by the courts established by or under the provisions of article VI of the constitution, since no section of the constitution gives the legislature power to confer jurisdiction thereof upon the Industrial Accident Commission. (*Pacific etc. Co.* v. *Pillsbury,* 171 Cal. 322, [153 Pac. 24]; *Western M. S. Co.*.

v. *Pillsbury,* 172 Cal. 407, [Ann. Cas. 1917E, 390, 156 Pac. 491]; *Carstens* v. *Pillsbury,* 172 Cal. 579, [158 Pac. 218]; *Employers' L. Assur. Corp.* v. *Industrial Acc. Com.,* 177 Cal. 775, [171 Pac. 935].)

Counsel for the commission cite the case of *State Ind. Com.* v. *Newman,* 222 N. Y. 363, [118 N. E. 794], as contrary to our views as aforesaid. The case is not in point. The constitution of New York contains no provision limiting the power of the legislature of that state to create new courts or tribunals such as are contained in our article VI. The question which we have discussed, that is, the power of the legislature to confer judicial power of this character upon the Industrial Accident Commission, could not arise in New York, for that state has not the constitutional limitations upon the legislative power to create courts which give rise to the question here and control our decision thereof.

It is further claimed that authority for the imposition of this liability and for the giving of this jurisdiction to the commission is found in section 17½ of article XX, which reads as follows: "The legislature may, by appropriate legislation, provide for the establishment of a minimum wage for women and minors and may provide for the comfort, health, safety and general welfare of any and all employees. No provision of this constitution shall be construed as a limitation upon the authority of the legislature to confer upon any commission now or hereafter created, such power and authority as the legislature may deem requisite to carry out the provisions of this section."

The arguments printed on the ballot for the election of 1914, at which this section was adopted, indicate that its main purpose was to authorize the establishment of a minimum wage for women and minors. Nothing whatever is said in the arguments upon any other subject except that there is a suggestion that all employers, bad as well as good, should be compelled to provide proper living and working conditions for their employees. The part of the section authorizing the legislature to "provide for the comfort, health, safety and general welfare of employees" was, as we think, intended to refer to the comfort, health, safety, and welfare of employees during the time of their employment and to have no reference to general provisions, such as are here involved, for the vocational re-education of those

who have been injured and are not able to pursue their former occupation. It certainly furnishes no authority and has no reference to authority for giving the Industrial Accident Commission power to enforce the levy of contributions upon employers for the purpose of raising revenue with which to carry on a school for the re-education of employees or for any other state purpose.

We find no ground upon which the jurisdiction of the commission can be upheld.

Many other objections are made to the constitutionality of the act, but, in view of the conclusion above stated, we deem it unnecessary to consider them.

It is ordered that the award of the Industrial Accident Commission aforesaid be annulled.

Lennon, J., Sloane, J., Wilbur, J., and Shurtleff, J., concurred.

Lawlor, J., concurred in the judgment.

Rehearing denied.

All the Justices concurred.