R. E. SHEEHAN COMPANY ET AL. *v.* SHULER, AS STATE TREASURER OF THE STATE OF NEW YORK, ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 593.  Argued January 9, 1924.—Decided May 26, 1924.

Amendments of the New York Workmen's Compensation Law (see *New York Central R. R. Co.* v. *White,* 243 U. S. 188,) provide that, when an injury causes the death of an employee leaving no beneficiaries, the employer or other insurance carrier shall pay the State Treasurer $500 for each of two special funds, one to be used in paying additional compensation to employees incurring permanent total disability after partial disability, the other in vocational education of employees so injured as to need rehabilitation, the use of the special funds for these purposes being additional compensation to employees thus injured over and above that prescribed as the payments to be made by their immediate employers.  *Held:*

(1) That the due process clause of the Fourteenth Amendment does not require that this additional compensation be paid by the immediate employers of the employees to be benefited, nor prevent the legislature from providing for its payment out of general funds created as above described.  P. 376.  *Mountain Timber Co.* v. *Washington,* 243 U. S. 219.

(2) The arrangement does not conflict with the equal protection clause.  P. 378.

236 N. Y. 579, affirmed.

ERROR to a judgment affirming two awards under the New York Workmen's Compensation Law, entered in the Supreme Court of New York after affirmances by the Appellate Division and the Court of Appeals and remittitur of the record. See also the case next following, *post*, p. 379.

*Mr. William H. Foster* for plaintiffs in error.

*Mr. E. Clarence Aiken,* Deputy Attorney General, with whom *Mr. Carl Sherman,* Attorney General of the State of New York, was on the brief, for defendants in error.

MR. JUSTICE SANFORD delivered the opinion of the Court.

This case involves the question of the constitutionality of two recent amendments to the Workmen's Compensation Law of New York. Enacted, Laws, 1913, c. 816; reënacted, Laws, 1914, c. 41.

This is a compulsory law establishing in certain employments classed as hazardous an exclusive system governing compensation for injuries to employees resulting in disability or death, irrespective of negligence, and requiring compensation to be paid to injured employees or, in case of death, to designated beneficiaries,[1] according to prescribed scales gauged by the previous wages and the extent of the disabilities or dependency of the beneficiaries. The employer is required to insure the payment of such compensation in a state insurance fund or with an authorized stock association or mutual association, unless, upon proof of his financial ability, he is permitted to become a "self-insurer." The constitutionality of this law was sustained in *New York Central R. R. Co.* v. *White,* 243 U. S. 188.

---

[1] A widow (or dependent husband), children under eighteen years of age, or other dependent relatives.

The Compensation Law was amended by the Laws of 1922, c. 615 (Consol. Laws, c. 67), so as to include, as subdivisions 8 and 9 of § 15, the two provisions involved in this case, which read:

" 8. *Permanent total disability after permanent partial disability.* If an employee who has previously incurred permanent partial disability through the loss of one hand," arm, foot, leg, or eye, " incurs permanent total disability through the loss of another member or organ, he shall be paid, in addition to the compensation for permanent partial disability "[2] and after the cessation thereof, " special additional compensation for the remainder of his life to the amount of sixty-six and two-thirds per centum of the average weekly wage earned by him at the time the total permanent disability was incurred. Such additional compensation shall be paid out of a special fund created for such purpose in the following manner: The insurance carrier [3] shall pay to the state treasurer for every case of injury causing death in which there are no persons entitled to compensation the sum of five hundred dollars. The state treasurer shall be the custodian of this special fund, and the [industrial] commissioner shall direct the distribution thereof.[4]

" 9. *Maintenance for employees undergoing vocational rehabilitation.* An employee, who as a result of injury is

---

[2] Subdivision 7 of § 15 provides that " an employee who is suffering from a previous disability shall not receive compensation for a later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with the previous disability." See note 4, *infra.*

[3] That is, the state fund, or corporation or association with which an employer has insured, or an employer permitted to become a " self-insurer." § 2.

[4] This subdivision, which was formerly subdivision 7 of § 15, was incorporated into the Compensation Law by the Laws of 1916, c. 622; the amount of the payment originally prescribed being one hundred dollars. Awards made to the state treasurer under this provision, in its original form, were sustained in *State Indust. Comm.* v. *New-*

or may be expected to be totally or partially incapacitated for a remunerative occupation and who, under the direction of the state board of vocational education is being rendered fit to engage in a remunerative occupation,[5] shall

---

man, 222 N. Y. 363, and *State Indust. Comm.* v. *Edsall,* 222 N. Y. 651 (affirming 179 App. Div. 481).

The history and purpose of this provision is thus stated in *State Indust. Comm.* v. *Newman, supra,* p. 366: " In March, 1914, the present Workmen's Compensation Law was finally enacted. . . . It did not then contain the provisions . . . of subdivision 7 of section 15.   In November, 1915, we decided that a claimant, who became an employee under the act, having theretofore lost a hand, became entitled, upon the loss of the remaining hand while such employee, to the compensation for permanent total disability and not to the lesser compensation for permanent partial disability. . . . Manifestly, the law was a hindrance to those who, having lost a hand or other member, sought to become employees under the act, because the loss of the remaining member subjected the employer to the payment of a compensation substantially greater than it would in case the employee had had the two members.   After the decision . . . the legislature by an amendment to subdivision 6 [now 7] of section 15 enacted that ' an employee who is suffering from a previous disability shall not receive compensation for a later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with the previous disability.' . . . The provisions of section 15 were supplemented in 1916 by the addition of subdivision 7. . . .   The evident and clear purpose of the subdivision was to remove a condition, as between employers and partially disabled employees, inconsonant with the spirit of the act and, perhaps, unjust, through the creation of a state fund contributed to by the insurance carriers and, as the permanent total disability arose, accessible to any member of the entire prescribed class of employees so disabled."

[5] The Laws of 1920, c. 760, added to the Education Law as Article 47, a " Rehabilitation Law," by which the State accepted the provisions of the federal appropriation for vocational training of disabled persons, made an additional appropriation therefor to the state department of education, and required the industrial commission to report to that department all cases of injuries received by employees which might result in need of rehabilitation.

receive additional compensation necessary for his maintenance;" but not exceeding ten dollars a week. "The expense shall be paid out of a special fund created in the following manner: The insurance carrier shall pay to the state treasurer for every case of injury causing death, in which there are no persons entitled to compensation, the sum of five hundred dollars. The state treasurer shall be the custodian of this special fund and the industrial commissioner shall direct the distribution thereof." [6]

In February, 1923, an employee of the Sheehan Company in one of the hazardous occupations, sustained, in the course of his employment, accidental injuries resulting in his death. He left no survivors entitled to compensation. The State Industrial Board, in an appropriate proceeding under the Compensation Law, awarded the State Treasurer against the Sheehan Company, as employer, and the Aetna Life Insurance Company, as insurance carrier, two sums of five hundred dollars each, pursuant to subdivisions 8 and 9, respectively, of § 15. On successive appeals these awards were affirmed, without opinions, by the Appellate Division of the Supreme Court and by the Court of Appeals. 206 App. Div. 726; 236 N. Y. 579. The record was remitted to the Supreme Court, to which this writ of error was directed. *Hodges v. Snyder,* 261 U. S. 600.

The companies contend that these subdivisions are in conflict with the Fourteenth Amendment and that the awards made thereunder deprive them of their property without due process and deny them the equal protection of the laws.

---

[6] This provision, which was formerly subdivision 8 of § 15, was incorporated into the Compensation Law by the Laws of 1920, c. 760; the amount of the payment originally prescribed being nine hundred dollars. The constitutionality of this subdivision, in its original form, was sustained in *Watkinson* v. *Hotel Pennsylvania,* 231 N. Y. 562 (affirming, without opinion, 195 App. Div. 624).

The substance of these two provisions is that when an injury causes the death of an employee leaving no beneficiaries, the employer or other insurance carrier shall pay the State Treasurer the sum of five hundred dollars for each of two special funds: one to be used in paying additional compensation to employees incurring permanent total disability after permanent partial disabilities; and the other, in the vocational education of employees so injured as to need rehabilitation. The use of such special funds for such purposes is an additional compensation to the employees thus injured, over and above that prescribed as the payments to be made by their immediate employers. Such additional compensation is neither unjust nor unreasonable. Thus, an employee who, having lost one hand in a previous accident, thereafter loses the second hand, is, obviously, not adequately compensated by the provision requiring his employer to make payment for the loss of the second hand, independently considered; [7] the total incapacity finally resulting from the loss of both hands working much more than double the injury resulting from the loss of each separate hand considered by itself. In such a case, however, as in the case of an injury requiring vocational rehabilitation, it is the theory of the law that such additional compensation to the injured employee should not be required of the particular employer in whose service the injury occurred, but should be provided out of general funds created by payments required of all employers when injuries resulting in the death of their own employees leaving no beneficiaries, do not otherwise create any liability under the Compensation Law.

We do not think that the due process clause of the Fourteenth Amendment requires that such additional compensation to injured employees of the specified classes,

[7] Note 2, supra, p. 373.

should be paid by their immediate employers, or prevents the legislature from providing for its payment out of general funds so created. In *Mountain Timber Co.* v. *Washington,* 243 U. S. 219, 244, it was held that a Workmen's Compensation Act did not deprive the employers of due process, because the compensation to the injured employees and their surviving dependents was not made by their immediate employers, but out of state funds to which the employers were required to make stated contributions, based upon definite percentages of their payrolls, in different groups of industries classified according to hazard. On this question the Court said: " To the criticism that carefully managed plants are in effect required to contribute to make good the losses arising through the negligence of their competitors, it is sufficient to say that the act recognizes that no management, however careful, can afford immunity from personal injuries to employees in the hazardous occupations, and prescribes that negligence is not to be determinative of the question of the responsibility of the employer or the industry. Taking the fact that accidental injuries are inevitable, in connection with the impossibility of foreseeing when, or in what particular plant or industry they will occur, we deem that the State acted within its power in declaring that no employer should conduct such an industry without making stated and fairly apportioned contributions adequate to maintain a public fund for indemnifying injured employees and the dependents of those killed, irrespective of the particular plant in which the accident might happen to occur. In short, it cannot be deemed arbitrary or unreasonable for the State, instead of imposing upon the particular employer entire responsibility for losses occurring in his own plant or work, to impose the burden upon the industry through a system of occupation taxes limited to the actual losses occurring in the respective classes of occupation."

So in the present case the State acted within its power, and neither arbitrarily nor unreasonably, in providing that a portion of the compensation to injured employees in cases coming within the provisions of subdivisions 8 and 9, should not be required in the form of direct payments by their particular employers but should be made from public funds established for that purpose by payments from employers whose own employees leave no beneficiaries.

The payments thus required are not unfair and unreasonable in amount. The aggregate for the two funds is one thousand dollars. This is much less than the maximum payment which may be required according to the scales in case the employee leaves survivors entitled to death benefits, and seems not to exceed, if it equals, the average amount of the payments required in such cases.

Nor are these provisions in conflict with the equal protection clause. The contention of the companies is that the prescribed awards are in the nature of a tax imposed upon the happening of a contingency, and are of unequal application; that is, that they are imposed only upon such employers as happen to have employees who are killed without leaving survivors entitled to compensation. However, this is not a discrimination between different employers, but merely a contingency on the happening of which all employers alike become subject to the requirements of the law. All are required to contribute, under identical conditions, to these special funds. *State Indust. Comm.* v. *Newman, supra,* p. 368.

The judgment of the Court of Appeals of New York is

*Affirmed.*