**HARPER v. PARKER, Deputy Commissioner, et al.**

**No. 2289.**

District Court, D. Maryland.

Jan. 23, 1935.

Thomas J. Tingley, of Baltimore, Md., for complainant.

Bernard J. Flynn, U. S. Atty., and G. Randolph Aiken, Asst. U. S. Atty., both of Baltimore, Md., for Deputy Commissioner.

CHESNUT, District Judge.

This appeal in the form of a bill of complaint to set aside, and enjoin the enforcement of an order of the Deputy Commissioner, arises in the course of administration of the Longshoremen's and Harbor Workers' Compensation Act (Act March 4, 1927, c. 509, 44 Stat. 1424, 33 USCA §§ 901–950). The question presented here, as in the case of De Wald v. Baltimore & O. R. Co., 71 F.(2d) 810, recently decided by the Circuit Court of Appeals for this Fourth Circuit, is whether a person, employed as the scowman on a barge engaged in the carriage of coal in the Baltimore Harbor, was within the coverage of section 3 of the act (33 USCA § 903). It is admitted that the question must be answered in the affirmative unless the employe's situation and duties at the time of his death bring him within the exception of subsection 1 of section 3 (a) of the act, 33 USCA § 903 (a) (1), which provides that no compensation shall be payable in respect to the disability or death of—a master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under 18 tons net. The exact point is whether the employe within the meaning of the act was "a master or member of a crew" of the scow.

After the death of the employe, one Harry Williams, a colored man, which occurred on May 23, 1933, by accidental drowning from the scow while moored to the coal dock of the Bethlehem Steel Company at Sparrows Point, Baltimore, Maryland, one Ola Grove, claiming to be his widow, filed a claim for compensation under the act. After hearing pertinent evidence the Deputy Commissioner made findings of fact which were in effect that the deceased employe was within the purview of the act but the claimant was not his lawful widow; and that the employe was not survived by any one within the classifica-

tion of dependents or beneficiaries within the act. Nevertheless under section 9 of the act (33 USCA § 909) the Deputy Commissioner ordered that funeral expenses in the amount of $175.00 should be paid by the employer, the plaintiff in this case; and it is agreed that as a result of the order the plaintiff employer will also be obliged, under section 44 of the act (33 USCA § 944), to pay the sum of $1,000 to the Treasury of the United States, into the special fund thereby created for the benefit of certain other employes entitled to the benefits of the act. Counsel for the plaintiff in this case does not challenge the validity of this latter provision of the act, if the order is otherwise valid, as it is considered that the cases of Sheehan Co. v. Shuler, 265 U. S. 371, 44 S. Ct. 548, 68 L. Ed. 1061, 35 A. L. R. 1056, and New York State Railways v. Shuler, 265 U. S. 379, 44 S. Ct. 551, 68 L. Ed. 1064 (upholding similar provisions of the New York State Workmen's Compensation Law [Consol. Laws, c. 67]—which was largely the pattern for the federal act in question) are controlling. See, also, Federal Mut. Lia. Ins. Co. v. Locke, 60 F.(2d) 895 (C. C. A. 2); and Lake Washington Shipyards v. Brueggeman, 56 F.(2d) 655 (D. C. Wash.).

There is no appeal on behalf of the alleged widow as claimant; and, therefore, the only question is as to the status of the deceased employe.

The findings of fact by the Commissioner describe in some detail the duties of the employe in this case. He had been in the employ of the plaintiff as a scowman on its barges for ten years and had been almost continuously engaged on the one particular scow from which he was accidentally drowned. The scow was the ordinary form of open lighter in common use in the Baltimore Harbor and was engaged principally in transferring coal from various coal piers within the harbor to the docks of the Bethlehem Steel Company at Sparrows Point, a distance of a few miles. The scowman was the only person engaged on the scow and his duties were generally to look after the scow and its load of coal and incidentally to assist in unloosening or fastening lines from the scow to the wharf. In addition his duties consisted in seeing that the coal was properly loaded on the scow and unloaded therefrom and in delivering tickets to the consignee and occasionally acting as watchman at night on the scow when the coal had not been unloaded during the day; and pumping water out of the scow and putting a light upon the scow at dusk. He lived on shore, reporting for work each morning, his usual hours being from 7 a. m. until 5 p. m. The scow had no motive power but was transported by tug from place to place in the harbor. It also had no equipment for steering apparatus and the employe was not responsible for the navigation other than the incidental duties above mentioned.

A comparison of the findings of fact of the Deputy Commissioner in this case with regard to the duties of this scowman with the findings made in the De Wald Case, supra, shows that there was no substantial difference between the duties of the respective employes in the two cases. It is, however, contended by plaintiff's counsel in this case that a distinction exists in that the duties of the employe in the present case were definitely more of a maritime nature in certain respects than those of the employe in the De Wald Case, who was held to be within the scope of the act and not covered by the exception above mentioned. Thus it is said that the testimony in this case before the Deputy Commissioner shows that Williams, the deceased employe, occasionally accomplished minor movements of the scow when alongside a dock by the use of a boat hook, and that he put up lights at night, and also that the scow in question was often used for transporting coal as a part of a whole flotilla of several scows conveyed by a tug generally arranged in tandem. And from these minor differences it is urged that the duties of Williams definitely classed him as a "seaman."

The question, however, is not whether for some purpose or in connection with some legal situations, Williams could properly be classed as a seaman, but is whether Williams was, within the meaning of the act, "a master or member of a crew" of the scow. In applying the Longshoremen's Act in the De Wald Case Judge Northcott, speaking for the Court of Appeals, said [page 813 of 71 F.(2d)]:

"It is to us reasonably clear that Congress intended to except from the benefits of the Longshoremen's Act only those persons ordinarily and generally considered as seafaring men, at least only those employed on board a vessel having a master and crew."

For the reasons given in the case it was held that the employe could not be ranged

within the exception either as the master or member of the crew of the scow. The reasoning in the case, based largely on a careful consideration of the legislative history of the act, is equally applicable to this case despite the minor differences suggested. As the matter has been so comprehensively considered by the Court of Appeals it is quite unnecessary to submit further discussion in support of the conclusion that the order of the Deputy Commissioner was based on substantial evidence and is in accordance with law.

It is also unnecessary to consider the relation of the Longshoremen's Act to the Maryland Workmen's Compensation Law on the one hand (Code Pub. Gen. Laws Md. 1924, art. 101 as amended), or the Jones Act, § 33 (46 USCA § 688) on the other. This question was made the basis of an interesting discussion by counsel and has been heretofore elaborately reviewed by the Supreme Court in recent cases. Nogueira v. N. Y., N. H. & H. R. R. Co., 281 U. S. 128, 50 S. Ct. 303, 74 L. Ed. 754; Uravic, Adm'x, v. F. Jarka Co., 282 U. S. 234, 51 S. Ct. 111, 75 L. Ed. 312; Crowell v. Benson, 285 U. S. 22, 52 S. Ct. 285, 76 L. Ed. 598. See also United States Casualty Co. v. Taylor, 64 F. (2d) 521 (C. C. A. 4). The legal problem is solved when it is determined that the employer was within the coverage of the act because by section 5, Longshoremen's and Harbor Workers' Compensation Act, 33 USCA § 905, the liability thereby prescribed is made "exclusive and in place of all other liability of such employer" (with an exception not here urged as in point). Southern Pac. Co. v. Locke, Deputy Com'r, 1 F. Supp. 992 (D. C. S. D. N. Y.). It would, therefore, seem to be immaterial that the duties of the employe in this case, before the passage of the Longshoremen's Act, might have brought him within the scope of the word "seaman" under the Jones Act (section 33). It should not be overlooked that the title of the act is the Longshoremen's and Harbor Workers' Compensation Act, and, as said in the De Wald Case, page 812 of 71 F.(2d), "it is hard to conceive of one who would come more definitely within the meaning of the words 'harbor worker,'" than Williams.

Counsel, after agreeing upon the form, may present an order for the dismissal of the proceeding with costs to be paid by the plaintiff.