## TERRITORY OF ALASKA v. ALASKA JUNEAU GOLD MINING CO.

Nos. 4083—A–4088—A.

District Court of Alaska. First Division. Juneau.
Sept. 24, 1938.

James Truitt, Atty. Gen., for plaintiff Territory of Alaska.

J. A. Hellenthal, of Juneau, for defendant.

ALEXANDER, District Judge.

The Territory of Alaska, as plaintiff, has filed in this court a series of actions against the Alaska Juneau Gold Mining Company, a corporation, same being numbered 4083–A, 4084–A, 4085–A, 4086–A, 4087–A and 4088–A, by which it seeks to recover in favor of the Territory and against the defendant, under the provisions of Sections 2161, 2162 and 2172, C.L.A.1933, known as the Alaska Workmen's Compensation Act, as amended by Chapter 84, S.L.A.1935.

The complaints in each of these cases allege in substance that the defendant was operating a mine at or near Juneau in the Territory of Alaska under a contract with all its employees and the Territory of Alaska to pay compensation to its said employees, or their beneficiaries, for injuries sustained, arising out of or in the course of their employment, causing disability or death, according to the provisions of the Workmen's Compensation Act of Alaska, to-wit, Section 2161, C.L.A.1933, as amended by Chapter 84, S.L.A.1935.

The complaints then allege that the named employee of defendant was killed in the course of his employment, and that by reason thereof and of such Workmen's Compensation Act the defendant is indebted to the plaintiff for the compensation provided for under the provisions of said act, in various amounts up to the maximum of $4,000; that the plaintiff has demanded payment of the amounts sued for as compensation to the Territory, but that said defendant has failed, neglected and refused to pay the same or any part thereof.

In each of said cases the defendant filed its demurrers to plaintiff's complaints, but subsequently abandoned the same without presentation, and filed its answers thereto, substantially admitting the facts set forth in plaintiff's several complaints, but denying that it was operating under any contract with the Territory or its employees to pay them compensation and denying all liability thereunder. The defendant then pleads three identical separate affirmative defenses to each of·plaintiff's complaints. To these affirmative defenses the plaintiff has demurred.

In 1929 the Legislature of Alaska.passed what is known as the Workmen's Compensation Act of Alaska, Laws 1929, c. 25, the title of which reads as follows: "An Act relating to the Measure and Recovery of compensation of injured employees in all businesses, occupations, work, employments, and industries employing five or more employees in the Territory of Alaska, except domestic service, agriculture, dairying and the operation of railroads as common carriers, and relating to the compensation of designated beneficiaries where such injuries result in death, defining and regulating the liability of employers to their employees in connection with such business and industries, * * * repealing all acts and parts of acts in conflict with this act and declaring an emergency."

In 1935 the Legislature amended this act by the enactment of Chapter 84 of the Session Laws of 1935, the title of the amendatory act reading as follows: "An Act To amend Section 2161, 2162 and 2172, Compiled Laws of Alaska 1933, relating to the payment of compensation to injured workmen, etc."

This amendment provides in substance for certain payments to be made to the Territory of Alaska in cases where a deceased employee leaves no beneficiaries, and for certain other payments in case the beneficiaries are of certain classes. Where there are no beneficiaries it is provided by the amendatory act of 1935 that the employer pay, in addition to the funeral expenses and hos-

pital expenses of the deceased employee, the sum of $4,-000 into the Territorial Treasury to be credited to current appropriations for allowance to aged residents. Other lesser sums are required to be paid into the Territorial Treasury, to be credited to current appropriations for allowance to aged residents, where the deceased employee leaves a wife or children, or a father or a mother, or both, who are aliens.

The pertinent parts of the amendatory act assailed by the defendant in its answers to these several causes of action are those which provide for additional compensation to be paid to the Territory, and that such amounts shall be credited to the current appropriation for allowance to aged residents, as for example; it is provided in subsection (8) of Section 4: "And in addition thereto shall pay to the Territory the sum of Four Thousand Dollars ($4,000.00), to be covered into the Territorial Treasury and credited to the current appropriation for allowance to aged residents."

The validity of these parts of the amendatory act is assailed by the defendant in its first, second and third affirmative defenses as void and of no effect in that they violate the provisions of our Organic Act and the Fourteenth Amendment to the Constitution of the United States.

In its second affirmative defense the defendant alleges:

"And the defendant further answering and by way of affirmative defense alleges: That the act under which this proceeding is brought, to-wit: Chapter 84 of the Session Laws of 1935, the same being an act entitled, 'An Act To amend Section 2161, 2162 and 2172, Compiled Laws of Alaska 1933, relating to the payment of compensation to injured workmen, etc.,' more especially in so far as it relates to the payment of compensation or other monies to the Territory of Alaska in the cases in said act specified, is void and of no effect in that the title violates the provisions of the Organic Act providing: 'No law

shall embrace more than one subject, which shall be expressed in its title,' in this (1) that the title of the act is insufficient for any purpose (2) in that the act contains more than one subject (3) in that the provisions of the act to which objection is made—that is to say, the provisions relating to the payment of compensation or other money to the Territory of Alaska, are not within the scope of the title of the act, and not germane to the subject expressed therein (4) and that the above mentioned portions of the act are void for the further reason that they violate the provisions of the act of Congress dated July 30, 1886, 48 U.S.C.A. § 1471, which provides that Territories are prohibited by acts of this character from 'changing the law of descent,' (5) and that the portions of said act which relate to the payment of compensation to the Territory, or the payment of other money to the Territory, the same being the portions of the act upon which this action is based, are void and of no effect in that they violate the Constitution of the United States, more especially in this: That they provide for the taking of private property from the defendant without compensation, that they deprive the defendant of property and liberty without due process of law; and that they impose a condition upon the right of private contract, which amounts to a deprivation of property and liberty without due process; and further, that the provisions referred to deny to the defendant the equal protection of the laws.

"And in this connection the defendant further avers: That the provisions of the act above referred to, which form the basis of this action and which relate to the payment of compensation or other money to the Territory of Alaska, are void in that they violate the provisions of the Organic Act reading as follows: '* * * all taxes shall be uniform upon the same class of subjects and shall be levied and collected under general laws, and the assessments shall be according to the actual value thereof. No tax shall be levied for territorial purposes in excess

of 1 per centum upon the assessed valuation of the property therein in any one year.'" 48 U.S.C.A. §§ 78, 79.

Boiled down to their elementals the principal questions raised under defendant's second affirmative defense and on the argument of plaintiff's demurrer thereto, and to which we shall devote our attention, are these:

First. That the act is void and of no effect in that the act contains more than one subject, contrary to the provisions of the Organic Act providing "No law shall embrace more than one subject, which shall be expressed in its title." 48 U.S.C.A. § 76.

Second. The provisions relating to the payment of compensation or other money to the Territory of Alaska are not within the scope of the act and not germane to the subject expressed therein, and

Third. That the so-called compensation which the act requires the employer to pay to the Territory is not "compensation" but is in reality a tax laid on the employer for purposes other than those expressed in the act, viz., to create a fund for allowance to aged residents, and is illegal because it is contrary to the provisions of Section 9 of the Organic Act, 48 U.S.C.A. § 78, providing "All taxes shall be uniform upon the same class of subjects and shall be levied and collected under general laws, and the assessments shall be according to the actual value thereof"; and in contravention of the Fourteenth Amendment to the Constitution of the United States.

Considering the first and second of these questions together, the portions of the act objected to deal with payment of compensation to the Territory, whereas the section of the compiled laws sought to be amended deals solely with payment of compensation to injured workmen and their dependents.

Under our Organic Act an act of the legislature must not only embrace one single subject, but that subject must be expressed in its title. This, the act in question fails to do. Here the original act provides for the payment of

compensation to injured workmen and their dependents, whereas the amendment seeks to provide for the payment of certain sums by the employers to the Territory in cases where the workman dies leaving no known heirs, or where he dies leaving heirs or beneficiaries of certain classes, and that the sums so paid by the employers shall be paid in to the Territorial Treasury and "credited to the current appropriation for allowance to aged residents."

The payment of a tax to the Territory for old age pensions is entirely outside the title of the original act and not germane to it, and the amendment being merely an act "to amend [the original act] Section 2161, 2162 and 2172, Compiled Laws of Alaska 1933, relating to the payment of compensation to injured workmen, etc.," did not increase the scope of the Original Act, which was in itself insufficient to support the amendment.

The law in this respect is summarized in 25 R.C.L. 836, as follows: "In a few jurisdictions the constitutional provision that a statute shall contain but one subject which shall be expressed in the title, has been held merely directory to the members of the legislature, and while operative on their consciences, relates only to bills during their progress through the legislative body, so that a failure to comply with it does not affect the validity of a law which is otherwise duly enacted. But the view that this provision is merely directory seems to conflict with the fundamental principle of constitutional construction that whatever is prohibited by the constitution, if in fact done, is ineffectual. And the vast preponderance of authority holds such provisions to be mandatory and that a failure to comply with them renders a statute void. There can, of course, be no question of the mandatory character of such a provision where the constitution in which it is contained provides in effect that its provisions are mandatory and prohibitive, unless declared to be otherwise by express words."

Our Organic Act expressly declares: "No law shall embrace more than one subject, which shall be expressed in its title." 48 U.S.C.A. § 76.

Thus we see that the above wording of our Organic Act is in itself mandatory, and lest there be confusion as to whether or not it is intended to be mandatory, the same paragraph of our Organic Act (Sec. 9) further provides: "All laws passed, or attempted to be passed by such legislature in said Territory inconsistent with the provisions of this section shall be null and void." 48 U.S.C.A. § 77.

■■ It is therefore apparent that the above-quoted provision of our Organic Act is mandatory; that the amendatory act contains more than one subject which is not expressed in its title; and that the disputed part of such amendatory act is not within the scope either of the original act or its title and not germane to the subject expressed therein.

In the case of Adams v. Acme White Lead & Color Works, 182 Mich. 157, 148 N.W. 485, 489, L.R.A.1916 A, 283, Ann.Cas.1916D, 689, the Supreme Court of Michigan had before it a question as to whether or not lead poisoning came within the purview of the provisions of the Compensation Act. The Compensation Act of Michigan is entitled, "An Act to promote the welfare of the people of this State, relating to the liability of employers for injuries or death sustained by their employes, providing compensation for the accidental injury to or death of employes and methods for the payment of the same, establishing an industrial accident board, defining its powers, providing for a review of its awards, making an appropriation to carry out the provisions of this act, and restricting the right to compensation or damages in such cases to such as are provided by this act." Pub.Acts Mich.1912, Ex.Sess., No. 10.

The Supreme Court there held that since the act provided for compensation for accidental injury or death to its employees it did not apply to lead poisoning, which is

an occupational disease and not an accident. The court said: "If it were to be held that the act was intended to apply to such diseases, it would, in so far as it does so, be unconstitutional and in violation of section 21 of article 5 of the Constitution of this state, which provides that: 'No law shall embrace more than one subject, which shall be expressed in its title.' That the act, if it were held to apply to and cover occupational diseases is unconstitutional in so far as it does so is shown by the fact that the body of the act would then have greater breadth than is indicated in the title. A careful analysis of the title of the act shows that the controlling words are, 'providing compensation for accidental injury to or death of employés.' No compensation is contemplated except for such injuries. The prefatory words are generally dependent upon the above-quoted clause. The only compensation provided is for 'accidental injury to or death of employés,' and the last clause of the title restricts the right to compensation or damages in such cases 'to such as are provided by this act.'"

It will be noted that the provisions of the Constitution of Michigan are identical with the provisions of our Organic Act above quoted. The question decided was, however, a much closer one than the question now before the court under the Alaska law, for, in the Michigan case, the title to the act did cover injuries sustained by employees, and it was contended by the plaintiff in that case that lead poisoning was an injury within the meaning of the title of the act. In the Alaska act, however, the act goes completely outside the scope of the act and its title and provides for something wholly foreign to both the scope and purpose of the act, viz., the payment by the employer of certain sums to the Territory, to be used for old age pensions. To the same effect see Jesse Rowe v. Richards and City of Watertown, 32 S.D. 66, 142 N.W. 664, L.R.A.1915E, 1069.

The language used in the text of Ruling Case Law, Vol. 25 R.C.L. 870, Sec. 115, is again particularly pertinent. It is there said: "Where an amendatory act changes the entire object and character of the law as by changing it from the exercise of the police power to the exercise of the taxing power of the state, the title of the act amended will not serve as the title of the amendatory act. An amendment absolutely prohibiting the sale of intoxicating liquors is not within the title of the act amended which states that it is to regulate such sales. An act to amend a section of a previous act which contains subjects not expressed in the title of either the amending act or the original act is unconstitutional. The constitutional requirement is violated by an act which, under a title purporting to amend certain particular sections of another statute, alters the subject matter of a different section to which no reference is made in the title."

In support of this principle the case of Vernor v. Secretary of State, 179 Mich. 157, 146 N.W. 338, Ann.Cas. 1915D, 128, is cited. The court there held that an amendatory act, the title of which stated that it was an act to amend certain sections of an automobile registration act, was not sufficiently broad to cover a tax on automobiles; and that the amendatory act changed the entire purpose and object of the original act without changing its title, and as such violated the constitutional provision that no law shall embrace more than one subject, which shall be expressed in the title.

In United States v. Howell, 5 Alaska 578, the court had before it the Act of 1915 extending the provisions of the eight-hour law adopted by the previous legislature to placer mining. The title of the original eight-hour act limited its application to lode mining. The amendatory act extended it to placer mining, without changing the title. The provision extending the act to placer mining was held void because not embraced within the title. In that case the court said: "The fact that a title is broader

than the act is not fatal, but the scope of the act is necessarily confined to the express limitations set forth in the act itself. So this act, by the provision in section 2, 'providing, however, that this act applies to all metalliferous lode mining only,' is not capable of amendment under the same title, so as to include all kinds of mining and reduction processes. Following this line of investigation, it is found that the title of the amendatory act enumerates eleven kinds of employment, while section 1 would broaden the scope to fifteen, and section 2 extends the number to sixteen by adding 'underground placer mining,' all under the title of the original act."

The court then quotes approvingly from Preston v. Stover in 70 Neb. 632, 97 N.W. 812, wherein it is stated in the syllabus: "Under the old as well as under the present Constitution, where the title to a bill is to amend a particular section of an act, no amendment is permissible which is not germane to the subject-matter of the original section."

The reasons for this rule are set out very cogently by the Supreme Court of Washington in Percival et al. v. Cowychee & White Hollow Irrigation District et al., 15 Wash. 480, 46 P. 1035, 1036, in these words: "But it will not do to sustain legislation which is so foreign to the subject-matter embraced in the title that one could read such title without having his attention in any manner directed towards the legislation attempted to be embraced thereunder. The title may be as broad as the legislature sees fit to make it, and thereunder any special legislation as to any subject relating to the general matter thus broadly embraced in the title sustained. But when it sees fit to adopt a restricted title, and thereunder attempts to enact provisions not fairly within such restricted title, such provisions cannot be given force by reason of the fact that it would have been competent for the legislature to have adopted a more generic title, and thereunder properly included all of the provisions of the act.

The object of such constitutional provisions is twofold: First, to prevent log-rolling legislation; and, second, to require such a title that one reading it would have his attention directed to every subject-matter in the act."

In Harland v. Territory, 3 Wash.T. 131, 13 P. 453–476, Turner, J. more fully explains the reasons for this limitation on the powers of the legislature by adopting the words of Judge Cooley in his excellent work on Const.Lim., viz. "It may, therefore, be assumed as settled that the purpose of these provisions was—First, to prevent hodgepodge or log-rolling legislation; second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked, and very carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard therein by petition or otherwise, if they shall so desire." Cooley, Const.Lim. (5th Ed.) 173.

See, also, People v. Hills, 35 N.Y. 449; People v. Briggs, 50 N.Y. 553; Tingue v. Village of Port Chester, 101 N.Y. 294, 4 N.E. 625; People v. Gadway, 61 Mich. 285, 28 N.W. 101, 1 Am.St.Rep. 578; State ex rel. Potter v. King County, 49 Wash. 619, 96 P. 156; State ex rel. Seattle Elec. Co. v. Superior Court King County, 28 Wash. 317, 68 P. 957, 92 Am.St.Rep. 831; Nat. Association of Creditors v. Brown, 147 Wash. 1, 264 P. 1005; Cornell v. McAlister, 121 Okl. 285, 249 P. 959.

■ Nor does the addition of "etc." add anything to the title of the amendatory act. Judge Cooley in his work on Constitutional Limitations, after referring to and reviewing the decisions of the courts upon this subject, says on page 177 et seq. of the Fourth Edition: "One thing, however, is very plain, that the use of the word 'other purposes' which has heretofore been so common in the title of acts, with a view of covering anything and every-

thing, whether connected with the main purpose indicated in the title or not, can no longer be of any avail where these provisions exist. As was said by the Supreme Court of New York in a case where these words had been made use of in the title of a local bill: 'The words "for other purposes" must be laid out of consideration. They express nothing and amount to nothing as a compliance with this constitutional requirement. Nothing which the act could not embrace without them can be brought in by their addition.' "

We find many cases in the books wherein the courts have upheld statutes providing that where employees left no heirs or beneficiaries the employer should pay a certain amount to be placed in a rehabilitation fund for the rehabilitation of employees, and like purposes of the act in question, as in Sheehan Co. v. Shuler, 265 U.S. 371, 44 S.Ct. 548, 68 L.Ed. 1061, 35 A.L.R. 1056; Home Accident Insurance Co. v. Industrial Commission, 34 Ariz. 201, 269 P. 501; Yosemite Lumber Co. v. Industrial Accident Commission, 187 Cal. 774, 204 P. 226, 20 A.L.R. 994; Salt Lake City v. Industrial Commission, 58 Utah 314, 199 P. 152, 18 A.L.R. 259.

However, we find no cases that go as far as the statute in question. The theory of Workmen's Compensation Laws is that industry should bear the burden of its own accidents, but we find no cases where the courts have required the employer to contribute to those injured otherwise than in industry, and certainly no cases which require the employers to contribute to the support of "aged residents" regardless of their employment, as is provided in the amendatory act in question.

In the most liberal interpretations of these acts we find this limitation scrupulously followed. For instance,—in Home Accident Insurance Co. v. Industrial Commission, cited supra, the Supreme Court of Arizona had before it a statute which provided for the payment of compensation, in those cases where there were no dependents,

of a fixed sum to the state, to be placed in a fund to be· used for the rehabilitation of those "disabled in industry or otherwise." Laws 1925, c. 83, § 70, subd. (A) 9.

The court held that the legislature could, under the police power, enact legislation to provide compensation for those disabled in industry, and held that this included rehabilitation, and to the extent that the fund was to be used for rehabilitation of those disabled in industry it was held valid, but that the added words "or otherwise" should be stricken from the statute in order to make it valid.

The ·California courts have been among the most liberal in their interpretation of laws of this character, but even they adhere strictly to the principle enunciated by the Supreme Court of Arizona.

In Yosemite Lumber Co. v. Industrial Accident Commission, 187 Cal. 774, 204 P. 226, 227, 20 A.L.R. 994, the legislature of the State of California had, as part of the Workmen's Compensation Act enacted a section under which employers were required to pay $350 in cases where there were no dependents. This amount was to be paid to the treasurer of the state and by him placed in a fund to be used primarily for the rehabilitation of injured employees generally. The law also contained a provision under which the surplus was to be used for some other purpose. The court held that the payment of compensation to the state under the circumstances mentioned is not payment of compensation to injured employees or their dependents, and hence void as not within the purview of the act.

In this connection the court said:

"The true intent of the act is to provide for the creation of a general fund for [the insurance bureau of the Industrial Accident Commission]. * * * It is therefore apparent that, when we have ascertained the kind and character of the disputes that may arise under the legislation authorized by the first part of the section, we have

found the limits beyond which the judicial power and jurisdiction of the Industrial Accident Commission can not go. * * *

"In so far as the act purports to exact from employers a sum to be used by the state for disabled workmen in general, it is in reality a taxing law, a revenue measure. It requires any employer to pay to the state the sum of $350 whenever one of his workmen who has no dependents is killed by an injury received in the course of his employment, and the fund thus raised is to be used for vocational re-education of workmen not connected in any way with such employer, and the surplus, if any, to go to pay the expenses of the state in carrying on the department or bureau administered by the Industrial Accident Association, all of which are public purposes. This is purely a tax. 'A tax is a charge upon persons or property to raise money for public purposes.' * * * A tax 'includes every charge upon persons or property, imposed by or under the authority of the Legislature, for public purposes,' " and as such that it could not be sustained as a tax because it lacked uniformity.

■ It has often been said by our courts that Workmen's Compensation Acts, to be constitutional must not be arbitrary, unreasonable or fundamentally unjust or oppressive.

■■ Also it is undisputed that the Territory can proceed under its taxing power to raise money to meet the expenses of government, but in order to make this exaction valid as a tax it must be in an act separate and apart from other acts, because taxation is a special subject of legislation and must conform to our Organic Act and other laws applicable thereto.

The legislature of the State of New Jersey passed an act very similar to the Alaska statute, and the constitutionality of this statute was attacked in Bryant v. Lindsay et al. 94 N.J.L. 357, 110 A. 823, 824.

The statute required the employer to pay, in addition to the expenses of the last sickness and burial, the sum of $400 to the State Commissioner of Labor to be used as part of a fund to pay the expenses of conducting the State Labor Bureau, another state agency, and in passing on it the court said:

"The real question is whether the state can, in view of the Fourteenth Amendment to the Federal Constitution, constitutionally tax as a class, all employers who employ workmen having no dependents who would be entitled to compensation in case of fatal accident. Such a tax has manifestly no relation to the police power; it is plainly not a property tax, and when we consider that it is restricted not merely to employers generally who have in their employ workmen with no dependents entitled to claim, but employers of that character who are within section two of the Compensation Act, we reach a tenuity of classification that seems to us to deprive the class of any logical validity and of all substantial basis. [Citing Southern Railway Co. v. Greene, 216 U.S. 400, 30 S.Ct. 287, 54 L.Ed. 536, 17 Ann.Cas. 1247.]

"From another standpoint the act seems to be simply a. taking of the property of this class of employers without any compensation therefor. They are in effect penalized for employing men or women who are without dependents qualified to claim compensation. * * * We are clear that it is an attempted exercise of the power of taxation which runs counter to our constitutional system, both national and state, and that it cannot be supported on that theory or on any other that has been suggested. The result is that there must be a judgment for the defendant."

In Juniata Limestone Co. v. Fagley, 187 Pa. 193, 40 A. 977, 42 L.R.A. 442, 67 Am.St.Rep. 579, the Supreme Court of Pennsylvania had under consideration an act imposing a tax on all employers of unnaturalized persons. at the rate of three cents per day per person; and the court said: " 'The tax is an arbitrary deduction from.

the daily wages of a particular class of persons. The equal protection of the laws declared by the Fourteenth Amendment to the constitution secures to every person within the jurisdiction of a state exemption from any burdens or charges other than such as are equally laid upon all others under like circumstances. * * * "Unequal exactions, in every form, or under any pretense, are absolutely forbidden, and of course, unequal taxation, for it is in that form that oppressive burdens are usually laid." ' * * * We think it is equally clear that the act offends against our own constitutional mandate, 'All taxes shall be uniform upon the same class of subjects,' etc. * * * It is very apparent from the act itself that the pretended classification of the subjects of taxation is arbitrary and illegal; but, in addition to that, it directly and intentionally discriminates against members of the same class, and creates an inequality among them. Further comment is unnecessary."

There has been cited to me only one case purporting to uphold an act like the Alaska act in question, and that is the case of Pacific Employers' Ins. Co. et al. v. Pillsbury et al., D.C., 14 F.Supp. 156. Here the court had under consideration the Federal Longshoremen's Act, 33 U.S.C.A. § 901 et seq., requiring a thousand dollars to be paid in to the United States Treasury in cases where there were no dependents, and this money placed in a fund from which additional compensation was to be paid to injured workmen that come under the act. This case does not, however, sustain the plaintiff's contention, nor support its theory in this case. The additional compensation required to be paid is to be used for the benefit of injured workmen that come under the act, and not for some purpose entirely outside of the act, such as a payment in to the Territorial Treasury for allowance to aged residents, as provided by the act under consideration.

The act in question is assailable for other reasons, but these we find it unnecessary to discuss and I have pur-

posely refrained from citing or discussing many authorities cited, in the interest of brevity.

It follows that the demurrer of plaintiff to defendant's second affirmative defense must be overruled, and it is so ordered.